905 P.2d 185

**Imogene COLEMAN, Plaintiff–Appellant,**

v.

**EDDY POTASH, INC., Defendant–Appellee.**

No. 21470.

Supreme Court of New Mexico.

Sept. 22, 1995.

646

Hanratty Law Firm, Kevin J. Hanratty, Artesia, for Appellant.

Law Offices of W.T. Martin, Jr., P.A., W.T. Martin, Jr., David W. Strickler, Carlsbad, for Appellee.

## OPINION

MINZNER, Justice.

Plaintiff–Appellant Imogene Coleman (Coleman) appeals from a district court order dismissing her claims of intentional and negligent spoliation of evidence made against her former employer, Eddy Potash, Inc. (Eddy Potash). We are presented with the questions whether Coleman's allegations of intentional and negligent spoliation of evidence state a claim for relief under New Mexico law and, if so, whether those claims are barred by the exclusivity provisions of the Workers' Compensation Act (WCA or Act), NMSA 1978, §§ 52–1–6 (effective January 1, 1992), –8, –9 (Repl.Pamp.1991).[1] We hold that a claim for intentional spoliation of evidence is cognizable in New Mexico, and that Coleman's claim for intentional spoliation of evidence is not barred by the exclusivity provisions of the WCA. In addition, rather than recognize an independent tort of negligent spoliation of evidence, we address Coleman's claim of negligence under traditional negligence principles and determine that the allegations are insufficient to state a claim for relief. We therefore affirm in part, reverse in part, and remand.

## I.

### FACTS

In May 1990 Coleman suffered serious injuries when she fell sixty-six feet during the course of her employment at a potash mine. She was riding on a vertical conveyor belt manlift that malfunctioned and failed to stop when she reached the top of the lift. Eddy Potash maintained a workers' compensation policy under which Coleman received appropriate benefits. Some time after the accident, and after inspection of the manlift by the Mine Safety & Health Administration, Eddy Potash disassembled and replaced the manlift, which had been in use at the mine for over forty years. Certain parts of the manlift are now missing.

After her accident Coleman sued a number of corporations involved in the manufacture, distribution, inspection, or servicing of manlifts. Coleman alleged that the disassembly of the manlift and the loss of important parts prejudiced her ability to recover against these defendants, particularly regarding her product liability claims. Asserting that Eddy Potash should have anticipated the need to preserve the manlift and that the manlift was dismantled with the intent to disrupt her case, Coleman included Eddy Potash with the other corporations in her suit for damages, and specifically charged Eddy Potash with the torts of intentional and negligent spoliation of evidence. The district court granted Eddy Potash's motion to dismiss the claims against it, and Coleman now appeals.

## II.

### HISTORY OF SPOLIATION OF EVIDENCE TORT

This Court has not addressed the question whether to recognize the tort of spoliation of evidence. In *Bush v. Thomas*, 119 N.M. 54, 888 P.2d 936 (Ct.App.1994), *cert. denied*, 119 N.M. 20, 888 P.2d 466 (1995), the Court of Appeals recently discussed this tort and assumed for purposes of its discussion that the defendant had a duty to preserve certain medical records. *Id.* at 55, 888 P.2d at 937. However, since the Court concluded that the plaintiff in that case failed to prove that the loss of the medical records had impaired her ability to prove her medical malpractice claim, it was unnecessary to actually decide whether negligent spoliation would be recog-

---

1. Section 52–1–6 was amended in 1992, after Coleman's industrial accident but before the present suit was filed in district court. We need not decide whether the present or earlier version of Section 52–1–6 is applicable to her case as the pertinent provisions, paragraphs D and E, were unchanged.

nized as an independent tort in New Mexico. *Id.*

Two judges in the United States District Courts for the District of New Mexico have determined that New Mexico would recognize the torts of intentional and negligent spoliation of evidence under the appropriate circumstances. *Dickey v. Norge Appliances,* Civ. No. 89–1104–JB (D.N.M. Jan. 11, 1991); *Black Hills Aviation, Inc. v. United States,* Civ. No. 90–0336–HB (D.N.M. Dec. 26, 1990). Relying on our decisions in *Schmitz v. Smentowski,* 109 N.M. 386, 785 P.2d 726 (1990) (recognizing cause of action for prima facie tort), and *Wilschinsky v. Medina,* 108 N.M. 511, 775 P.2d 713 (1989) (holding that physicians owe a duty to third persons who foreseeably may be harmed by negligent treatment of a patient), the *Dickey* court determined that this Court is willing to apply traditional principles of tort law to new fact situations in order to establish legal duties and liabilities not previously recognized. *See Dickey,* slip op. at 4.

In general, however, the tort of spoliation of evidence has not been widely adopted in other jurisdictions, nor has much agreement emerged on its contours and limitations. *See generally* Lawrence Solum & Stephen Marzen, *Truth and Uncertainty: Legal Control of the Destruction of Evidence,* 36 Emory L.J. 1085, 1100–06 (1987); Theresa M. Owens, Note, *Should Iowa Adopt the Tort of Intentional Spoliation of Evidence in Civil Litigation?,* 41 Drake L.Rev. 179, 181–90 (1992); Thomas G. Fischer, Annotation, *Intentional Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable,* 70 A.L.R.4th 984 (1989).

In *Smith v. Superior Court,* 151 Cal. App.3d 491, 198 Cal.Rptr. 829, 833 (1984), California became the first jurisdiction to recognize explicitly a tort for intentional spoliation of evidence. The *Smith* court analogized intentional spoliation of evidence to the tort of intentional interference with prospective business advantage, *id.,* 198 Cal.Rptr. at 836, and concluded that a prospective civil action in a products liability case is a probable expectancy entitled to legal protection, *id.* at 837. Following, *Smith* California recognized a cause of action for negligent spolia-

tion of evidence in *Velasco v. Commercial Building Maintenance Co.,* 169 Cal.App.3d 874, 215 Cal.Rptr. 504, 506 (1985).

As in California, Alaska and Ohio also have recognized intentional spoliation of evidence as a distinct tort. *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463 (Alaska 1986); *Smith v. Howard Johnson Co.,* 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993). Alaska has declined to extend its ruling to cover negligent destruction or loss of evidence. *Sweet v. Sisters of Providence in Washington,* 881 P.2d 304, 313 (Alaska 1994) (shifting of burden of proof to defendant on issues of negligence and causation sufficient remedy for party claiming negligent spoliation of evidence by party defendant; no need to decide whether separate tort would be appropriate against third party not associated with underlying lawsuit).

Three states, Illinois, New Jersey, and New York, have recognized causes of action analogous to a tort of spoliation without fully embracing California's approach. *Rodgers v. St. Mary's Hosp.,* 198 Ill.App.3d 871, 145 Ill.Dec. 295, 556 N.E.2d 913, 916 (1990) (recognizing statutory cause of action for failure to preserve medical records and holding that violation of statute imposing such a duty establishes prima facie evidence of negligence), *aff'd,* 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992); *Hirsch v. General Motors Corp.,* 266 N.J.Super. 222, 628 A.2d 1108, 1115 (1993) (recognizing claim for intentional fraudulent concealment of evidence); *Weigl v. Quincy Specialties Co.,* 158 Misc.2d 753, 601 N.Y.S.2d 774, 777 (Sup.Ct. 1993) (allowing amendment of complaint to substitute spoliation claims with causes of action for common law negligence and prima facie tort).

Florida recognized a cause of action for the negligent spoliation of evidence in *Bondu v. Gurvich,* 473 So.2d 1307, 1312 (Fla.Dist.Ct. App.1984), *review denied,* 484 So.2d 7 (Fla. 1986). In doing so, the *Bondu* court relied on criteria to establish a claim in ordinary negligence—particularly on the need to show the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the benefit of the plaintiff. *Id.* at 1312. That court found

a duty in state administrative records and statutes to make and preserve certain medical records. Florida courts later determined that a contractual agreement also may give rise to the duty to preserve potential evidence. *Miller v. Allstate Ins. Co.*, 573 So.2d 24, 27 (Fla.Dist.Ct.App.1990), *review denied*, 581 So.2d 1307 (Fla.1991); *see also Continental Ins. Co. v. Herman*, 576 So.2d 313, 315 (Fla.Dist.Ct.App.1990), *review denied*, 598 So.2d 76 (Fla.1991).

A number of states have rejected the spoliation tort or have declined to recognize it as a separate cause of action under the particular facts before the court. *E.g., La Raia v. Superior Court*, 150 Ariz. 118, 722 P.2d 286, 289 (1986) (en banc) (plaintiff's action for personal injury within realm of existing tort law); *Murphy v. Target Prods.*, 580 N.E.2d 687, 690 (Ind.Ct.App.1991) (absent promise, contract, statute, or special circumstances, employer has no duty to preserve evidence for employee's use in third-party suit); *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177, 1183 (1987) (same); *Miller v. Montgomery County*, 494 A.2d 761, 768 (Md.Ct.Spec.App.1985) (appropriate remedy for alleged spoliation of evidence by party to cause of action is evidentiary presumption that evidence was unfavorable, not separate or collateral action), *cert. denied*, 304 Md. 299, 498 A.2d 1185 (1985); *Panich v. Iron Wood Prods. Corp.*, 179 Mich.App. 136, 445 N.W.2d 795, 798 (1989) (refusing to create tort under facts of case); *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 436 (Minn.1990) ("[A]n action for negligent spoliation could be stated under existing negligence law without creating a new tort."); *Brown v. Hamid*, 856 S.W.2d 51, 56–57 (Mo.1993) (en banc) (no basis presented for recognition of torts of intentional or negligent spoliation of evidence); *Brewer v. Dowling*, 862 S.W.2d 156, 159–60 (Tex.Ct.App.1993) (intentional spoliation of evidence raises presumption that evidence was unfavorable; independent tort not recognized).

### III.

### INTENTIONAL SPOLIATION

■ In *Schmitz* this Court recognized that we have "traditionally afforded relief for wrongs intentionally and maliciously committed," 109 N.M. at 396, 785 P.2d at 736, and in that case we recognized a cause of action for prima facie tort. In doing so we followed the approach stated in *Restatement (Second) of Torts* § 870 (1977): "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." *Schmitz*, 109 N.M. at 394, 785 P.2d at 734. In concurrence with these principles, we hold today that New Mexico recognizes a cause of action for intentional spoliation of evidence.

■ We base our recognition of this tort on our belief that the intentional destruction of potential evidence in order to disrupt or defeat another person's right of recovery is highly improper and cannot be justified. Thus we see no need for any balancing on a case-by-case basis of the factors we announced in *Schmitz* regarding the culpability of the conduct and whether the conduct is justifiable. Instead, we will recognize intentional spoliation of evidence as a distinct category of tort liability. We define this tort as the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action. In order to prevail on an intentional spoliation of evidence theory, a plaintiff must allege and prove the following: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages. *See* Philip A. Lionberger, *Interference with Prospective Civil Litigation by Spoliation of Evidence: Should Texas Adopt a New Tort?*, 21 St. Mary's L.J. 209, 222 (1989); *see also Smith v. Howard Johnson*, 615 N.E.2d at 1038.

■ In this case Coleman alleged that by failing to preserve the manlift Eddy Potash "acted intentionally" and "such acts were designed to disrupt plaintiff's case."

These allegations, together with allegations that establish causation and damages, are sufficient to give notice of Coleman's claims and legally sufficient to state a claim for relief. A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true. *New Mexico Life Ins. Guar. Ass'n v. Quinn & Co.*, 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991).

On remand Coleman should be allowed a sufficient amount of time to pursue discovery and to substantiate her claim that various parts of the manlift were intentionally destroyed or lost for the purpose of disrupting the suit against the various defendants involved in the manufacturing and distribution of the equipment. We, of course, do not preclude resolution of this issue by summary proceedings if the trial court is satisfied that there is no genuine issue of material fact and that judgment may be entered as a matter of law.

## IV.

### NEGLIGENT SPOLIATION

A number of other courts that have been asked to recognize an independent tort of negligent spoliation of evidence have concluded that traditional negligence principles have direct relevance, and that adequate remedies exist under those principles to redress the negligent destruction of potential evidence. We agree. Thus we decline to recognize the negligent destruction of potential evidence as a separate tort.

The traditional requirements for a cause of action founded upon negligence are duty, breach, proximate causation, and damages. *Tafoya v. Seay Bros. Corp.*, 119 N.M. 350, 352, 890 P.2d 803, 805 (1995). It is well settled that the existence of a duty is a question of law. *Wilschinsky*, 108 N.M. at 513, 775 P.2d at 715. We have described duty in negligence cases as " 'an obligation to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Ramirez v. Armstrong*, 100 N.M. 538, 541, 673 P.2d 822, 825

(1983) (quoting W. Prosser, *The Law of Torts* § 53 (4th ed. 1971)). The recognition of a duty in any given situation is essentially a legal policy determination that the plaintiff's injured interests are entitled to protection. *See Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990). The process involves an implicit balancing of interests to determine whether it is reasonable to impose the burden upon the defendant to avoid a particular risk of harm to the plaintiff. *See id.; see also Wilschinsky*, 108 N.M. at 513, 775 P.2d at 715.

We first observe that an individual's recovery in a civil lawsuit is a prospective economic interest that is entitled to protection. This is implicit in our recognition of a cause of action for intentional interference with this interest. However, generally speaking, liability for interference with prospective economic interests has been limited to cases of intentional interference. *See* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 130 (5th ed. 1984) [hereinafter *Prosser and Keeton* ]. Indeed, as pointed out in *Prosser and Keeton,* cases are infrequent in which even the claim has been made that the defendant's negligence has prevented the plaintiff from realizing some prospective economic advantage. *Id. Prosser and Keeton* state that recovery based upon negligence is not impossible, but also that recovery depends upon the existence of some special reason for finding a duty of care. *Id.* In addition, under the circumstances of this case, the consequences of requiring an owner to retain or safeguard certain personal property must be evaluated in connection with the general expectation that an owner has a free hand in the manner in which he or she disposes of his or her property. Taking the above considerations into account, we believe that it would be unreasonable to impose a duty on an owner to preserve his personal property for the use of another individual in a potential lawsuit in the absence of special circumstances.

In general, states that have recognized a duty to preserve potential evidence have based such a duty on an agreement or contract between the parties, on applicable

state statutes and regulations, or on other special circumstances. *See Miller v. Allstate,* 573 So.2d at 27 (contract); *Continental Ins. Co.,* 576 So.2d at 314 (agreement); *see also Pirocchi v. Liberty Mut. Ins. Co.,* 365 F.Supp. 277 (E.D.Pa.1973) (voluntary assumption of duty); *Bondu,* 473 So.2d at 1312 (state statutes and administrative regulations); *Federated Mut. Ins. Co.,* 456 N.W.2d at 436–37 (bailor and bailee). We agree with this approach. We hold that in the absence of such a circumstance a property owner has no duty to preserve or safeguard his or her property for the benefit of other individuals in a potential lawsuit.

■ Here the sum of Coleman's allegations regarding the negligent spoliation claim are that Eddy Potash "failed to preserve or protect the manlift for use as evidence in future litigation, although it knew, or should have reasonably anticipated that there was a likelihood of future litigation." These allegations encompass none of the special circumstances we have described. For this reason the allegations are legally insufficient to establish a duty on the part of Eddy Potash to have preserved the manlift for Coleman's benefit. Moreover, these allegations do not give rise to any question of fact whether it was reasonably foreseeable that replacement of the manlift would prejudice Coleman's potential recovery in a civil suit. We conclude that Eddy Potash had no duty to preserve the manlift and that the trial court did not err in dismissing the claim for negligent spoliation.

## V.

### EXCLUSIVITY RULE

■ The final question in this case is whether Coleman's claims were barred by the WCA's exclusivity provisions. The district court found that Coleman was barred from pursuing any claims for spoliation of evidence under the WCA's exclusivity provisions. Eddy Potash contends on appeal that the district court was correct in its conclusion. We disagree.

The basis for the Act's exclusivity rule in New Mexico is found in several distinct statutory provisions, Sections 52–1–6, –8, and –9.

We list the pertinent portions of these statutes below:

**Section 52–1–6(D):** Such compliance with the provisions of the Workers' Compensation Act, including the provisions for insurance, shall be, and construed to be, a surrender by the employer and the worker of their rights to any other method, form or amount of compensation or determination thereof or to any cause of action at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for or on account of personal injuries or death of the worker than as provided in the Workers' Compensation Act....

**Section 52–1–6(E):** The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee ... for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act.

**Section 52–1–8:** Any employer who has complied with the provisions of the Workers' Compensation Act relating to insurance or any of the employees of the employer ... shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as provided in the Workers' Compensation Act, and all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee and accruing to any and all persons whomsoever, are hereby abolished except as provided in the Workers' Compensation Act.

**Section 52–1–9:** The right to compensation provided for in this act in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

These provisions differ somewhat in both their wording and the formula used to express the exclusivity rule. However, the basic import and logic of these provisions is the same: the compensation remedy provided in the Act is exclusive of all other remedies against the employer for the same injury.[2] An important qualification to this rule is that the injury must fall within the Act's coverage formula in order to preclude other remedies. *See* 2A Arthur Larson, *The Law of Workmen's Compensation* § 65, at 12–1 (1995). As noted by Professor Larson, if an injury is not included within the Act's coverage formula, the exclusivity provisions do not disturb existing remedies. *Id.*

Then Judge Walters, writing for the Court of Appeals in *Hernandez v. Home Education Livelihood Program, Inc.,* 98 N.M. 125, 645 P.2d 1381 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), made essentially this same point. Judge Walters wrote that in order to bring a cause of action "exclusively" within the WCA, the claimant must have sustained a personal injury that was accidental and that arose out of and in the course of the claimant's employment. *Id.* at 127, 645 P.2d at 1383. She noted that the absence of any one of these elements destroys recovery under the WCA *and* removes any existing cause of action from its exclusivity provisions. *Id.* Thus the *Hernandez* Court determined that it was error to bar a claim for breach of an employment contract because this claim cannot be equated with recovery for "personal injuries" under the WCA. *Id.* at 128, 645 P.2d at 1384. The

type of personal injuries within the coverage of New Mexico's Act are those related to a worker's physical or psychological job-related disabilities. *See* NMSA 1978, § 52–1–24 (Repl.Pamp.1991) (Effective January 1, 1991); *see also Michaels v. Anglo Am. Auto Auctions, Inc.,* 117 N.M. 91, 93, 869 P.2d 279, 281 (1994) (exclusivity provisions no bar to claim of retaliatory discharge).[3]

Whether at the time of an accident an employee is performing service arising out of and in the course of his or her employment is often an issue in cases where compensation under the WCA is sought. Less frequently, an injured worker may claim the right to sue his employer in tort asserting that one of these two elements is lacking. Thus the *Hernandez* Court also determined that it was error to dismiss claims for physical and emotional distress when, under the circumstances of that case, the claimant was not performing service in the course of his or her employment at the time of the incident giving rise to the alleged injuries. 98 N.M. at 128, 645 P.2d at 1384. Similarly, in *Beckham v. Estate of Brown,* 100 N.M. 1, 664 P.2d 1014 (Ct.App.), *cert quashed,* 100 N.M. 192, 668 P.2d 308 (1983), the Court of Appeals determined that a salesman was not performing service in the course of his employment during a plane trip awarded for high sales; therefore, the Act's exclusivity provisions were not a bar to a wrongful death action after the salesman was killed when the plane crashed. *Id.* at 6–7, 664 P.2d at 1019–20. *See also Cox v. Chino Mines/Phelps Dodge,* 115 N.M. 335, 337, 850 P.2d 1038, 1040 (Ct. App.1993) (sexual harassment not injury arising out of claimant's employment).

Coverage under the WCA is also limited to accidental injuries. NMSA 1978, §§ 52–1–9, –19 (Repl.Pamp.1991). Thus an intentional injury inflicted on a worker by

---

2. The three statutes have been amended through the years. However, the general tenor of the exclusivity language in all three has remained the same.

3. While claims for an employer's bad-faith refusal to pay workers' compensation benefits would appear not to be claims for "personal injuries" covered by the WCA, and thus would be the proper subject of a separate suit, *see Russell v.*

*Protective Ins. Co.,* 107 N.M. 9, 12, 751 P.2d 693, 696 (1988), remedies for an employer's bad faith have been added to the WCA. *See* NMSA 1978, § 52–1–28.1 (Repl.Pamp.1991) (Effective January 1, 1991). Bad-faith claims are now subject to the WCA's exclusivity provisions. *Cruz v. Liberty Mut. Ins. Co.,* 119 N.M. 301, 303, 889 P.2d 1223, 1225 (1995).

the employer in person, or by his or her alter ego, lies outside the provisions of compensation act and forms the basis for a common-law action for damages. 2A Arthur Larson, *supra*, § 68, at 13–1; *Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.), *cert. denied*, 115 N.M. 79, 847 P.2d 313 (1993); *Gallegos v. Chastain*, 95 N.M. 551, 554, 624 P.2d 60, 63 (Ct.App.1981). The test in such cases is whether the injury stems from an actual intent to injure the worker. *Johnson Controls World Servs.*, 115 N.M. at 118, 847 P.2d at 763. If so, the Act's exclusivity provisions do not bar the suit. *Id.*

Taking the above considerations into account, we hold that a worker's claim against his employer for intentional spoliation of evidence is not barred by the Act's exclusivity provisions. First, as we have defined it, the tort of intentional spoliation requires an actual intent on the defendant's part to harm the plaintiff's economic interests. An employer should not be heard to say that such an injury was "accidental" and so within the Act's exclusivity provisions.

 In addition, under the facts of this case, we think that any destruction of the manlift to defeat Coleman's recovery against third parties cannot be considered to be an injury that arose out of and in the course of her employment. The two preceding requirements are not synonymous: the first requirement relates to the injury's cause and requires a showing that the injury was the result of a risk either incident to the work itself or increased by the employment circumstances. *Cox*, 115 N.M. at 337, 850 P.2d at 1040. The second requirement relates to the time, place, and circumstances under which the accident takes place. *Beckham*, 100 N.M. at 4, 664 P.2d at 1017. Here nothing suggests that the destruction of machinery involved in an industrial accident was a risk incident to Coleman's employment, much less that there was a risk that Coleman's employer would intentionally destroy such machinery in order to defeat a worker's third-party lawsuit. It is also undisputed that Coleman was hospitalized at the time the manlift was dismantled and replaced. Thus the destruction of the manlift and the asserted intentional injury to her economic interests had no relation in time, place, and circumstances to her actual employment.

Coleman's primary argument on appeal has been that "the Workers' Compensation Act does not extend immunity to an employer whose act caused appellant an injury separate and distinct from the physical injury suffered by her in the course of her employment." We agree that Coleman's claim for intentional spoliation asserts a claim for a separate and distinct injury, and thus that the Act does not provide her exclusive remedy. The Act is intended to compensate for personal injury and death and has no relevance when an intentional interference with economic expectancies causes injury other than "personal injury or death" arising out of and in the course of employment.

 Further, having affirmed the district court's dismissal of Coleman's claim for negligent spoliation on another ground, we need not address the question whether the exclusivity provision would bar such a claim. However, the tort of negligent spoliation as it has evolved in other states would appear to be a claim for injury to prospective economic interests and not a claim for personal injury. We do not see how the Act would be relevant to such a claim and conclude that as the claim has evolved elsewhere, it would not be barred by the exclusivity provision.

## VI.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Coleman's claim for negligent spoliation of evidence, we reverse the dismissal of her claim for intentional spoliation of evidence, and we remand this cause to the district court for further proceedings. Coleman shall recover her appellate costs.

**IT IS SO ORDERED.**

RANSOM AND FRANCHINI, JJ., concur.