2010 UT 39

Bruce HILLS and Judith Hills, individually, and as natural parents and heirs of Mark D. Hills (deceased), Plaintiffs and Appellants,

v.

UNITED PARCEL SERVICE, INC.; UPSCO United Parcel Service Co.; Liberty Mutual Holding Company, Inc.; Liberty Mutual Fire Insurance Company; and Skyline Electric Company, Defendants and Appellees.

No. 20080826.

Supreme Court of Utah.

May 14, 2010.

Edward P. Moriarity, Bradley L. Booke, Salt Lake City, Minot C. Maser, Missoula, MT, for plaintiffs.

Michael E. Dyer, Kira M. Slawson, Dori K. Petersen, Salt Lake City, Taggart Hansen, Jason C. Schwartz, Daniel J. Davis, Denver, CO, for defendant United Parcel Service, Inc.

Michael E. Dyer, Salt Lake City, for defendant UPSCO United Parcel Service Co.

Gary L. Johnson, Zachary E. Peterson, Salt Lake City, for defendant Liberty Mutual Holding Company, Inc. and Liberty Mutual Fire Insurance Company.

Dennis R. James, Brian H. Hess, Sara N. Becker, Salt Lake City, for defendant Skyline Electric Company.

NEHRING, Justice:

## INTRODUCTION

¶ 1 In this appeal we consider for the first time whether Utah should recognize a cause of action for third-party spoliation of evidence. Bruce and Judith Hills sued United Parcel Service, Inc. ("UPS") and Liberty Mutual Fire Insurance Co. for destroying evidence related to the death of their son, Mark Hills. Mark Hills' death is the subject of a wrongful-death suit against Skyline Electric Co. The district court dismissed the Hills' spoliation complaint under Utah Rule of Civil Procedure 12(b)(6) because it did not state a claim inasmuch as Utah does not recognize an independent tort of spoliation of evidence. Because we decline to adopt a tort of spoliation under the unique facts of this case, we affirm.

## BACKGROUND

### I. THE ACCIDENT AND INVESTIGATION

¶ 2 In August 2003, Skyline performed electrical work on a light fixture in a UPS mobile distribution unit. Skyline's work was fatally defective. Skyline failed to ground the fixture, creating a life-threatening "hot" electrical environment within the trailer. Four days later, at about 4:20 a.m., UPS employee Mark Hills reached for a fallen package and completed the electric circuit. He was electrocuted.

¶ 3 UPS mounted an immediate investigation of Mark Hills' death. UPS summoned Skyline personnel to the scene of the accident at about 6:15 a.m. UPS instructed Skyline to disassemble an electrical j-box that appeared to be the source of the problem. During this process, a plastic wall anchor piece disappeared.

¶4 Approximately three hours later, UPS contacted the Utah Occupational and Safety Health Division of the Labor Commission ("UOSH"). The UOSH compliance officer who came to the scene noted that it had already been altered. As a result, he was unable to ascertain the cause of Mark Hills' electrocution. The compliance officer instructed UPS to seal the scene from any further contact or activity until authorized by UOSH.

¶5 The next morning, UPS's workers' compensation insurance carrier, Liberty Mutual, hired an electrical contractor to investigate the scene. When the UOSH compliance officer returned to the scene that afternoon, he recognized that despite his instructions, the scene had been altered yet again. As a result, UOSH fined UPS $71,700. When UPS contested the citation, the compliance officer reduced the fine to $6,000 and reclassified the citation from "willful" to "serious." The officer reasoned that although "the plastic anchor pertaining to the cause of the accident was removed or destroyed while under the control of UPS," the situation was mitigated because UPS provided photographs of the plastic wall anchor taken shortly after the accident occurred.

## II. PROCEDURAL HISTORY

¶6 Two lawsuits followed. First, the Hills filed a wrongful-death action against Skyline. They alleged that Skyline's negligent installation of electrical equipment caused Mark Hills' death. Second, during the discovery stage of the wrongful-death case, the Hills sued UPS, Liberty Mutual, and Skyline for allegedly destroying evidence related to the cause of electrocution. The complaint in the latter spoliation lawsuit alleged three causes of action: negligence, "intentional-misconduct," and "tortious interference."

¶7 In response, UPS and Liberty Mutual moved to dismiss the Hills' spoliation complaint; Skyline filed cross-claims against UPS for spoliation of evidence, opposed UPS's motion to dismiss, and joined the Hills' opposition to UPS's motion to dismiss. UPS then moved to dismiss Skyline's cross-claim on the grounds that Utah does not recognize the tort of spoliation of evidence.

The district court ordered that both lawsuits be consolidated for discovery purposes. The court also stayed UPS's and Liberty Mutual's motions to dismiss the Hills' spoliation complaint pending the resolution of the wrongful-death action.

¶8 After further discovery, Skyline admitted liability for Mr. Hills' death but disputed the damages alleged by his estate. In light of Skyline's concession of liability in the wrongful-death action, UPS and Liberty Mutual renewed their motions to dismiss the Hills' spoliation complaint.

¶9 The district court initially dismissed Skyline's cross-claims against UPS, the Hills' negligence claims against all defendants, and any part of the "intentional misconduct" and "tortious interference" claims that duplicated damage claims in the wrongful-death action. The Hills do not appeal these orders. The court left open any claims for damages, including punitive damages, that might be found to flow from the alleged spoliation of evidence.

¶10 After supplemental briefing on the pending issues, the district court dismissed the Hills' remaining "intentional misconduct" and "tortious interference" claims under Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The court concluded that since neither of the Hills' claims exist in Utah, the Hills "appear to be claiming an independent tort of intentional spoliation of evidence." The court found, however, that neither "the intentional nor the negligent spoliation of evidence as an independent tort has been adopted in Utah." The court therefore applied traditional tort law and dismissed the Hills' spoliation claims because the Hills failed to show any damages caused by the alleged spoliation since Skyline had admitted liability in the underlying wrongful-death action. As an alternative ground for its decision, the district court held that the claims were barred by the exclusive-remedy provision of the Utah Workers' Compensation Act. We have jurisdiction over this appeal pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

¶ 11 Because the propriety of a dismissal under Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim is a question of law, "we give the trial court's ruling no deference and review it under a correctness standard." *Helf v. Chevron U.S.A., Inc.*, 2009 UT 11, ¶ 14, 203 P.3d 962 (internal quotation marks omitted).

## ANALYSIS

¶ 12 This case presents two issues, each an issue of first impression: (1) whether Utah recognizes an independent tort of spoliation of evidence and, if so, (2) whether Utah recognizes a dual-capacity exception to the exclusive-remedy provision of the Utah Workers' Compensation Act. Because we decline to adopt a tort of spoliation of evidence on the facts of this case, we do not address the dual-capacity-exception issue.

## I. WE DECLINE TO ADOPT AN INDEPENDENT TORT OF SPOLIATION OF EVIDENCE ON THE FACTS OF THIS CASE

¶ 13 The Hills ask this court to adopt an independent tort of spoliation of evidence. They contend that if we recognize this tort, the district court will have erred when it dismissed their complaint for failure to state a claim because the Hills would have sufficiently stated the claim that UPS and Liberty Mutual negligently and/or intentionally spoliated evidence related to their wrongful-death action against Skyline.

¶ 14 In contrast, UPS and Liberty Mutual urge this court to reject an independent tort of spoliation of evidence. They also contend that even if we adopt a tort of spoliation, the Hills cannot state a claim under the tort because Skyline has admitted liability in the wrongful-death action and, as a result, the Hills cannot show damages resulting from the alleged spoliation.

¶ 15 This court has consistently refused to issue advisory opinions or resolve purely academic matters where the outcome will not affect the rights of the parties. *See Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 19, 218 P.3d 583; *McRae v. Jackson*, 526 P.2d 1190, 1192 (Utah 1974). Here, Skyline has admitted that it is liable for Mark Hills' wrongful death. All parties acknowledge that spoliation is a derivative cause of action. As such, it depends on another independent claim, here wrongful death, for its viability. Since Skyline has conceded liability in the primary wrongful-death action, the damages awarded to the Hills in that action will subsume any spoliation damages. Therefore, adopting a spoliation claim under the unique facts of this case would be a wholly-academic exercise.

### A. The History of the Tort of Spoliation of Evidence

¶ 16 Spoliation is defined as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence." Black's Law Dictionary 1437 (8th ed. 2004). Spoliation can be either negligent or intentional and may be carried out by a first or third party. *See Dowdle Butane Gas Co. v. Moore*, 831 So.2d 1124, 1128 (Miss.2002). A first-party spoliator is a party to the underlying action (or the party's attorney) who spoliates evidence necessary or relevant to the plaintiff's claims against that party. *See id.* A third-party spoliator is often a stranger to the underlying action or "a party not alleged to have committed the underlying tort as to which the lost or destroyed evidence related." *Id.* at 1129 (internal quotation marks omitted).

¶ 17 The tort of spoliation of evidence was first recognized in 1984 by the California Court of Appeals. *See Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829, 832 (1984). The tort enjoyed a short life span in California. Fourteen years later, in 1998, the California Supreme Court reversed course and extinguished the tort of first-party spoliation. *See Cedars–Sinai Med. Ctr. v. Superior Court*, 18 Cal.4th 1, 74 Cal. Rptr.2d 248, 954 P.2d 511, 521 & n. 4 (1998). One year later, the court also extinguished the tort of third-party spoliation. *See Temple Cmty. Hosp. v. Superior Court*, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223, 225 (1999). Because most jurisdictions have looked to the California line of cases for guidance when faced with the question of whether to adopt a tort of spoliation, we

briefly review California's experience with the tort. *See, e.g., Goff v. Harold Ives Trucking Co.*, 342 Ark. 143, 27 S.W.3d 387, 389 (2000) ("We find it instructive that California, the first state to adopt spoliation as an independent tort, has changed course and, more recently, [California's] highest court has held specifically that the tort would no longer be recognized.").

¶ 18 The California Court of Appeals first recognized the tort of spoliation in *Smith v. Superior Court.* 198 Cal.Rptr. at 837. In *Smith*, the plaintiff was permanently blinded when a wheel came off another motorist's van and crashed into her windshield. *Id.* at 831. After the accident, the van was towed to the repair shop that had customized the wheels. *Id.* Even though the repair shop agreed to preserve parts of the van for investigation, it "destroyed, lost or transferred said physical evidence, making it impossible for the [plaintiff's] experts to inspect and test those parts in order to pinpoint the cause of the failure of the wheel assembly on the van." *Id.* The plaintiff sued the repair shop for "Tortious Interference with Prospective Civil Action By Spoliation of Evidence." *Id.* The district court dismissed the complaint because California did not recognize a tort of spoliation. *Id.* at 832. The court of appeals reversed, noting that "California has long recognized [for] every wrong there is a remedy, and has allowed for new torts through the legislative and judicial process." *Id.* (alteration in original) (internal quotation marks and citations omitted). The court crafted a tort of intentional spoliation of evidence by analogy to the already recognized tort of intentional interference with prospective business advantage. *Id.* at 836. The court reasoned that "a prospective civil action in a product liability case is a valuable 'probable expectancy' that the court must protect from the kind of interference alleged herein." [1] *Id.* at 837. Shortly after *Smith*, the California Court of Appeals also adopted a tort of negligent spoliation of evidence. *Velasco v. Commercial Bldg. Maint. Co.*, 169 Cal. App.3d 874, 215 Cal.Rptr. 504, 506 (1985).

¶ 19 Fourteen years after *Smith*, the California Supreme Court reversed course and extinguished the tort of first-party spoliation of evidence. In *Cedars–Sinai Medical Center v. Superior Court*, the plaintiff alleged that the defendant hospital had intentionally destroyed medical records to prevent the plaintiff from prevailing in his medical malpractice claim against the hospital. 74 Cal. Rptr.2d 248, 954 P.2d at 512. Although the California Supreme Court acknowledged that "the intentional destruction of evidence should be condemned," it concluded that any benefits created by the tort were outweighed by the costs and burdens it would impose. *Id.*, 74 Cal.Rptr.2d 248, 954 P.2d at 515. The court identified three particular concerns: "the conflict between a tort remedy for intentional first party spoliation and the policy against creating derivative tort remedies for litigation-related misconduct; the strength of existing nontort remedies for spoliation; and the uncertainty of the fact of harm in spoliation cases." *Id.*

¶ 20 The court first noted that it "favored remedying litigation-related misconduct by sanctions imposed within the underlying lawsuit rather than by creating new derivative torts." *Id.* The court explained that derivative-tort liability for spoliation of evidence would subvert the court's interest in moving matters expeditiously toward final judgment and could possibly create endless litigation that "would be worse than occasional miscar-

---

1. The Hills urge this court to adopt an intentional tort of spoliation, in part, because Utah—like California—recognizes the tort of intentional interference with prospective economic relations. *See Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶¶ 29, 32–33, 116 P.3d 323; *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 303–04 (Utah 1982). We do not view our recognition of the tort of intentional interference with prospective relations as a compelling reason to adopt a wholly-new tort of spoliation of evidence. Moreover, as the Hills acknowledge in their brief, "California subsequently retreated from acknowledging

spoliation," and the California Supreme Court later found the court of appeals' analogy to the tort of intentional interference with prospective economic relations misplaced. *See Temple Cmty. Hosp.*, 84 Cal.Rptr.2d 852, 976 P.2d at 231 ("[W]hen our lower courts originally—*and mistakenly*—recognized a cause of action for intentional spoliation of evidence, ... they did so in large part because they considered the cause of action to be analogous to the tort of intentional interference with prospective economic advantage." (emphasis added)).

riages of justice." *Id.*, 74 Cal.Rptr.2d 248, 954 P.2d at 517 (internal quotation marks omitted). The court also analogized evidence spoliation to perjury, explaining that even though both "undermine[ ] the search for truth and fairness by creating a false picture of the evidence before the trier of fact ... there is no civil remedy in damages against a witness who commits perjury when testifying." *Id.*, 74 Cal.Rptr.2d 248, 954 P.2d at 516.

¶ 21 Similarly, the *Cedars–Sinai* court noted the existence of effective nontort remedies, explaining that courts have at their disposal various discovery sanctions, criminal penalties, negative evidentiary inferences, and attorney discipline procedures. *Id.*, 74 Cal.Rptr.2d 248, 954 P.2d at 517–18. Finally, the court expressed concern that "in a substantial proportion of spoliation cases the fact of harm will be irreducibly uncertain" and the jury would be forced to speculate as to how the spoliated evidence might have affected the underlying litigation. *Id.*, 74 Cal. Rptr.2d 248, 954 P.2d at 518. Due to this risk of erroneous liability, the court was also worried that recognition of the tort would have a perverse over-deterrence effect, causing persons or entities to pursue costly measures to preserve otherwise irrelevant documents and equipment. *Id.*, 74 Cal.Rptr.2d 248, 954 P.2d at 519–21.

¶ 22 One year after *Cedars–Sinai*, the California Supreme Court also rejected the tort of intentional third-party spoliation. In *Temple Community Hospital v. Superior Court*, the plaintiff was badly burned during facial surgery. 84 Cal.Rptr.2d 852, 976 P.2d at 225. She claimed that a surgical tool produced a flame that ignited oxygen in the anesthesia and severely burned her face. *Id.* Because the hospital did not retain important evidence—even though the plaintiff's lawyer had expressly requested it to do so—the plaintiff claimed that the hospital had interfered with her potential products-liability action against the tool manufacturer and obstructed her ability to recover damages for her injuries. *Id.*, 84 Cal.Rptr.2d 852, 976 P.2d at 225–26. As in *Cedars–Sinai*, the court expressed concern that third-party spoliation claims would produce "endless round[s] of litigation." *Id.*, 84 Cal.Rptr.2d 852, 976 P.2d at 229. The court also found that "the uncertainty of the fact of harm arising from [first party] spoliation—is equally applicable in third party spoliation." *Id.*, 84 Cal.Rptr.2d 852, 976 P.2d at 230.

¶ 23 The *Temple Community* court recognized, however, "that the salient distinction between first- and third-party spoliation of evidence is the disparity in sanctions available within the confines of the underlying litigation." *Id.*, 84 Cal.Rptr.2d 852, 976 P.2d at 232. The court further acknowledged that "[t]he evidentiary inference ... as well as most discovery sanctions ... are not available when a person who is not a party to the litigation and who is not an agent of a party intentionally has destroyed evidence." *Id.* Conversely, the court explained that criminal sanctions and limited discovery sanctions still existed, the legislature could devise effective sanctions for spoliation, and the parties could contractually create obligations to preserve evidence. *Id.* The court concluded:

> [T]he benefits of recognizing a tort cause of action, in order to deter third party spoliation of evidence and compensate victims of such misconduct, are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies.

*Id.*, 84 Cal.Rptr.2d 852, 976 P.2d at 233.

¶ 24 Relying on *Cedars–Sinai* and *Temple Community*, the California Court of Appeals later held that California does not recognize a cause of action for negligent spoliation of evidence because "it would be ... anomalous to impose tort liability upon a negligent spoliator whose conduct is not near so egregious as that of an intentional spoliator." *Lueter v. State*, 94 Cal.App.4th 1285, 115 Cal.Rptr.2d 68, 76 (2002).

**B.** *Among the Twelve States That Recognize an Independent Tort of Spoliation in Some Form, Nearly All Recognize a Cause of Action for Intentional Third–Party Spoliation*

¶ 25 In the twenty-five years since the tort of spoliation of evidence was first recognized

in California, the tort "has not been widely adopted ... nor has much agreement emerged on its contours and limitations." *Dowdle Butane Gas Co. v. Moore*, 831 So.2d 1124, 1128 (Miss.2002). Most states have applied the reasoning of the California Supreme Court and continue to rely on traditional nontort remedies, inadequate as they may be. *See, e.g., id.* at 1132–35. Other states have refused to adopt an independent spoliation tort but permit recovery for spoliation under traditional negligence law. *See, e.g., Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267, 270 (1995). Still others have declined to adopt the tort under the unique facts presented on appeal. *See, e.g., Sharpnack v. Hoffinger Indus., Inc.*, 231 Ga.App. 829, 499 S.E.2d 363, 365 (1998) (declining to adopt a tort of spoliation because "[t]he evidence which plaintiff maintains was spoliated ... could not have affected the outcome of the [plaintiff's] underlying claims").

¶ 26 Conversely, twelve jurisdictions have recognized and retained the tort of spoliation of evidence in some form.[2] Although the precise contours of the tort are amorphous,[3] courts that have adopted the tort tend to rely on two basic policy justifications: first, to provide a remedy for spoliation victims who would otherwise be unable to recover in their underlying lawsuits; and second, to deter future spoliation of evidence. *See, e.g., Rizzuto v. Davidson Ladders, Inc.*, 280 Conn.

---

**2.** Listed alphabetically, the states that have recognized the tort of spoliation in some form are: Alabama, *Smith v. Atkinson*, 771 So.2d 429, 432–35 (Ala.2000) (permitting spoliation claim under existing negligence law, but applying a rebuttable presumption that the plaintiff would have recovered in the underlying litigation); Alaska, *Hibbits v. Sides*, 34 P.3d 327, 328–330 (Alaska 2001) (recognizing intentional first- and third-party spoliation); Connecticut, *Rizzuto v. Davidson Ladders, Inc.*, 280 Conn. 225, 905 A.2d 1165, 1173 (2006) (recognizing intentional first-party spoliation); District of Columbia, *Holmes v. Amerex Rent–A–Car*, 710 A.2d 846, 847 (D.C.1998) (recognizing "negligent or reckless spoliation of evidence" as an "independent and actionable tort"); Florida, *Cont'l Ins. Co. v. Herman*, 576 So.2d 313, 315 (Fla.Dist.Ct.App.1990) (adopting cause of action for negligent spoliation of evidence), *but see Martino v. Wal–Mart Stores, Inc.*, 908 So.2d 342, 347 (Fla.2005) (rejecting any cause of action for first-party spoliation); Indiana, *Thompson v. Owensby*, 704 N.E.2d 134, 140 (Ind.Ct.App.1998) (It is the plaintiff's prerogative to "pursue a tort action rather than seeking a discovery sanction or ... evidentiary inference."); Louisiana, *McCool v. Beauregard Mem. Hosp.*, 814 So.2d 116, 118 (La.Ct.App.2002) (recognizing a tort action "against someone who has impaired the party's ability to institute or prove a civil claim due to negligent or intentional spoliation of evidence"); Montana, *Oliver v. Stinson Lumber Co.*, 297 Mont. 336, 993 P.2d 11, 19–22 (1999) (adopting negligent third-party spoliation and expressing a willingness to adopt intentional spoliation); New Jersey, *Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 961 A.2d 1167, 1187–91 (2008) (permitting a remedy for litigation-related spoliation under the already adopted tort of fraudulent concealment); New Mexico, *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185, 189–91 (1995) (recognizing an intentional spoliation tort, but rejecting a negligent spoliation tort), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M.

Indus., Inc., 231 Ga.App. 829, 499 S.E.2d 363, 365 (1998)

272, 34 P.3d 1148, 1153–55 & n. 3 (2001); Ohio, *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (1993) (recognizing a cause of action "between the parties to the primary action and against third parties" "for [willful] interference with or destruction of evidence"); and West Virginia, *Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560, 568–74 (2003) (recognizing negligent third-party spoliation and intentional first- or third-party spoliation).

**3.** The elements for negligent and intentional spoliation vary by jurisdiction. In general, however, most states that have adopted an intentional spoliation tort require some variation of the following elements:

(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of [the] defendant that litigation exists or is probable, (3) willful destruction of evidence by [the] defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Rizzuto*, 905 A.2d at 1178 (alterations in original) (internal quotation marks omitted).

The basic elements of a tort of negligent spoliation are neatly summarized by the Montana Supreme Court:

(1) existence of a potential civil action;
(2) a legal or contractual duty to preserve evidence relevant to that action;
(3) destruction of that evidence;
(4) significant impairment of the ability to prove the potential civil action;
(5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;
(6) a significant possibility of success of the potential civil action if the evidence were available; and
(7) damages.

*Oliver*, 993 P.2d at 19.

225, 905 A.2d 1165, 1178 (2006) ("[E]xisting nontort remedies are insufficient to compensate victims of spoliation and to deter future spoliation.").

¶ 27 With these two justifications in mind, a general pattern emerges: courts prefer to recognize a cause of action for intentional spoliation over negligent spoliation, and are more likely to recognize third-party spoliation than first-party spoliation. The combined result is that states are least likely to recognize a cause of action for first-party negligent spoliation and most likely to recognize third-party intentional spoliation. *See, e.g., Hannah v. Heeter*, 213 W.Va. 704, 584 S.E.2d 560, 568–74 (2003) (declining to recognize first-party negligent spoliation, but adopting all other forms of the tort).

¶ 28 This pattern is not surprising. An intentional spoliator is far more culpable than a negligent spoliator. *See Lueter v. State*, 94 Cal.App.4th 1285, 115 Cal.Rptr.2d 68, 76 (2002) ("[I]t would be ... anomalous to impose tort liability upon a negligent spoliator whose conduct is not near so egregious as that of an intentional spoliator."); *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 905 P.2d 185, 189 (1995) ("[T]he intentional destruction of potential evidence in order to disrupt or defeat another person's right of recovery is highly improper and cannot be justified."), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148, 1153–55 & n. 3 (2001). And some courts permit "an action for negligent spoliation [to] be stated under existing negligence law." *See, e.g., Boyd*, 209 Ill.Dec. 727, 652 N.E.2d at 270.

¶ 29 The preference for a third-party spoliation tort is even more defensible. Like most courts, I agree that traditional nontort remedies adequately deter first-party spoliation and fairly compensate victims. *See, e.g., Trevino v. Ortega*, 969 S.W.2d 950, 961 (Tex. 1998) ("Without creating a new cause of action, there are still a variety of remedies available to punish spoliators, deter future spoliators, and protect nonspoliators prejudiced by evidence destruction."). Third-party spoliation, however, paints a different picture. Almost all states—including those that

have refused to adopt a tort of spoliation—acknowledge that when dealing with third-party spoliators, traditional nontort remedies such as evidentiary inferences, discovery sanctions, and attorney disciplinary measures are unavailable or largely ineffectual. *See, e.g., Hibbits v. Sides*, 34 P.3d 327, 329 (Alaska 2001) ("Given the limited availability of evidentiary sanctions in the third-party context, ... there is reason to recognize intentional third-party spoliation as a tort even if first-party spoliation is not so recognized."); *Dowdle Butane Gas Co.*, 831 So.2d at 1128 (rejecting a third-party spoliation tort but conceding that "not all of the litigation-related remedies for spoliation apply to third parties," which is a distinction that "has proved crucial in many jurisdictions"). Accordingly, while most states have rejected a cause of action for first-party spoliation, nearly all jurisdictions that have adopted the tort in some form recognize a tort for third-party spoliation.[4] In other words, if a state were to adopt any form of spoliation tort, it would most likely be a third-party intentional spoliation tort.

¶ 30 The fact that all jurisdictions concede that traditional nontort remedies will be unavailing as against third-party spoliators also highlights the basic "philosophical divide" between courts that choose to adopt a third-party spoliation tort and those that reject the tort. *See id.* On one side of the divide are courts that place a higher value on judicial efficiency and finality of judgments; on the other side are courts that value the need to provide a remedy to victims of spoliation and to deter future evidence spoliation. *Compare e.g., Temple Cmty. Hosp. v. Superior Court*, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223, 233 (1999) ("[W]e conclude that the benefits of recognizing a tort cause of action, in order to deter third-party spoliation of evidence and compensate victims of such misconduct, are outweighed by the burden to litigants, witnesses, and the judicial system that would be imposed by potentially endless litigation over a speculative loss, and by the cost to society of promoting onerous record and evidence retention policies.") *with Rizzu-*

---

4. *See supra* note 2.

*to,* 905 A.2d at 1178 ("[E]xisting nontort remedies are insufficient to compensate victims of spoliation and to deter future spoliation when a first party defendant destroys evidence intentionally"). Although we value spoliation deterrence and victim compensation, because Skyline has admitted liability in the Hills' underlying wrongful-death action, we decline to adopt a tort of spoliation on the unique facts of this case.

### C. *We Decline to Adopt a Tort of Spoliation in This Case Because Skyline Has Admitted Liability in the Hills' Underlying Wrongful–Death Action*

¶ 31 On appeal, the Hills allege that UPS and Liberty Mutual negligently and/or intentionally altered or destroyed evidence related to their underlying wrongful-death action against Skyline. Because UPS and Liberty Mutual are not parties in the wrongful-death case, first-party spoliation is not at issue here; the issue properly framed is whether this court will recognize an independent tort of negligent and/or intentional third-party spoliation of evidence.

¶ 32 I am doubtful that existing nontort remedies sufficiently deter intentional third-party spoliators or adequately compensate victims of such spoliation. When third parties are involved, the incentive to spoliate evidence may simply be too great.[5] As Harvard Law School professor Charles Nesson has explained, the incentive to destroy evidence is best appreciated by imagining the spoliator as an "amoral calculator ... who cares only for the material consequences of his actions." Charles R. Nesson, *Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Ac-*

*tion,* 13 Cardozo L.Rev. 793, 795 (1991). This amoral spoliator

is a pure cost-benefit calculator, moved by the simple calculus of risk against advantage. Unlike good men and women who are influenced by conscience, the [spoliator] is unmoved by soft considerations of ethics and morality except as they translate ... into bottom line effects. While the good man feels obliged by conscience to obey the law, the [spoliator] will commit the tort or crime if the expected gain exceeds the expected loss.

*Id.* I agree with Professor Nesson and fear that without tort liability, third parties—especially corporate entities—will conclude that the benefits of evidence spoliation outweigh the unlikely imposition of court sanctions, administrative fines, and criminal penalties.[6] Indeed, as this case shows, evidence tends to disappear when the risk of seldom-enforced nontort remedies are weighed against the risk of payment on a wrongful-death claim. This is especially problematic considering that the intentional spoliation of evidence threatens to undermine the integrity of our entire legal system.

¶ 33 Notwithstanding the need to deter third-party spoliation and compensate its victims, this is not an appropriate case to adopt an independent tort of third-party spoliation of evidence. Of course, I recognize that the holding in this case subverts my expressed intolerance for spoliation; my expression of contempt for third-party spoliation is, in light of this case, little more than rhetoric.

¶ 34 Regardless of the rhetorical nature of our decision today, Skyline has already admitted liability in the Hills' underlying wrongful-death action. Because any evidence spoliated by UPS and Liberty Mutual

---

5. I am not convinced that a cause of action for negligent spoliation would deter negligent spoliators. It seems unlikely that a negligent spoliator would change his behavior—precisely because it is not intentional—simply because of the possibility of increased legal liability.

6. Because this court does not adopt an independent tort of spoliation today, I would especially encourage prosecutors, courts, and administrative agencies to use existing nontort remedies whenever applicable. For instance, a district court can require parties that abuse the discov-

ery process to pay "the reasonable expenses incurred in obtaining the order [to produce the requested discovery], including attorney fees." *See* Utah R. Civ. P. 37(a)(4)(A). Spoliators are also subject to criminal charges for tampering with evidence under Utah Code section 76–8–510.5(2) (2008) or obstruction of justice under Utah Code section 76–8–306 (Supp.2009). Finally, administrative remedies—like the fine levied against UPS in this case—may be available when parties destroy evidence in violation of Utah Administrative Code Rule 614–1–5(C)(2).

relates only to proving liability in the underlying action, not damages, the Hills' legal remedy is unaffected by the alleged spoliation of evidence. Therefore, the Hills cannot show a causal link between the damages asserted in their underlying wrongful-death claim and the alleged spoliation of evidence by UPS and Liberty Mutual. As a result, "[t]his appeal presents simply an abstract question of law which does not rest upon existing facts or rights" that would affect the outcome in the underlying action. *McRae v. Jackson*, 526 P.2d 1190, 1192 (Utah 1974). We therefore decline to adopt an independent tort of third-party spoliation on the facts of this case. Whether I would adopt a tort of third-party spoliation under different facts remains an open question.

## CONCLUSION

¶ 35 The independent tort of spoliation of evidence is a recent and highly debated cause of action that has not been widely adopted. Those states that recognize the tort have relied on two primary justifications for its adoption: first, to allow victims of spoliation a way to recover damages when they are unable to prove their underlying case because of the spoliation; and second, to deter future spoliation of evidence.

¶ 36 Here, the Hills' measure of damages is unaffected by the spoliated evidence because Skyline has admitted liability in the underlying wrongful-death action. We therefore refuse to adopt the tort of spoliation under the unique facts of this case because it would not affect the outcome in the Hills' wrongful-death action. Whether I would adopt an independent cause of action for intentional third-party spoliation is an open question. Accordingly, this court affirms the order of the district court dismissing the Hills' spoliation complaint under Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

DURRANT, Associate Chief Justice, concurring in part and dissenting in part:

¶ 37 I agree with Justice Nehring's conclusion that it is unnecessary for us to determine whether to adopt the tort of spoliation of evidence in this case. As he correctly points out, given Skyline's stipulation of liability in the wrongful death suit, "the Hills' legal remedy is unaffected by the alleged spoliation of evidence," because "any evidence spoliated by UPS and Liberty Mutual relates only to proving liability in the underlying action." That is, the alleged interference with, or failure to preserve the integrity of, the scene of the accident has not damaged the Hills' ability to recover for Mark Hills' wrongful death.

¶ 38 I believe that this conclusion makes it unnecessary for us to examine the status of the tort of spoliation of evidence in other jurisdictions and to speculate about the policies that would animate this court to adopt it. I agree with Justice Nehring that where the evidence that a party claims was spoliated is only probative of an issue that the party has no need to prove, that party cannot state a claim for spoliation of evidence. This holding would apply regardless of whether, and to what extent, different facts might support a spoliation claim in Utah.

¶ 39 Given this conclusion, I decline to join in the portion of Justice Nehring's opinion that he acknowledges to be a largely rhetorical exercise. While his examination of the status of this law in other jurisdictions is apparently very thorough, and while I do not disagree with the value of safeguarding the integrity of the judiciary, the consequence of such extensive dicta is that we risk advising lower courts and future litigants with regard to an issue we expressly decline to decide. Accordingly, while I concur with Justice Nehring's conclusion that we need not determine in this case whether to adopt the tort of spoliation of evidence, I decline to join the remainder of his opinion.

¶ 40 Chief Justice DURHAM, Justice WILKINS, and Justice PARRISH concur in Associate Chief Justice DURRANT'S concurring and dissenting opinion.