2009 UT 56

**UTAH DEPARTMENT OF TRANSPORTATION, Plaintiff and Appellee,**

v.

**James IVERS, Katherine G. Havas, P and F Food Services (Tenant), and Zions Credit Corporation, Defendants and Appellants.**

No. 20080287.

Supreme Court of Utah.

Aug. 21, 2009.

584

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Randy S. Hunter, Asst. Atty's Gen., for plaintiff.

Donald J. Winder, John W. Holt, Lance F. Sorensen, Salt Lake City, for defendants.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 We review for a second time the Utah Department of Transportation's (UDOT) taking of property owned by the Appellants, James Ivers, Katherine G. Havas, and P & F Food Services (collectively, Arby's). In *Ivers v. Utah Department of Transportation*, 2007 UT 19, 154 P.3d 802, we addressed whether damages were awardable for Arby's loss of view where the view-impairing structure was not built on the condemned property but was part of the project for which the property was condemned. We held that if the condemned property was essential to the project, Arby's would be entitled to severance damages. We remanded to the district court to determine the factual question of whether Arby's condemned property was essential to the project and, if so, directed the district court to award Arby's appropriate damages.

On remand, the district court allowed UDOT to amend its complaint pursuant to statute to exclude Arby's right of view. We reverse and remand.

## BACKGROUND

¶ 2 In addressing this case once more, we do not repeat the entire factual background contained in *Ivers v. Utah Department of Transportation*, 2007 UT 19, ¶¶ 2–6, 154 P.3d 802 (*Ivers I* ). Instead, we recount only those facts relevant to this appeal.

¶ 3 In 2002, UDOT filed a complaint to condemn a 0.048–acre portion of private property belonging to Arby's. The condemnation helped eliminate the intersection of Shepard Lane and Highway 89 in Farmington, Utah, in order to elevate the highway and build a one-way frontage road. Although Arby's condemned property was used for a portion of the frontage road, none of the elevated highway was constructed upon it.

¶ 4 UDOT paid Arby's $48,250 for the condemned property, and the district court entered the Final Order of Condemnation on March 7, 2005. Arby's, however, also sought severance damages on the grounds that the loss of visibility of the restaurant from the highway and the loss of view from Arby's property diminished the market value of its remaining land. UDOT filed a motion in limine to exclude evidence of the loss of visibility and view. The district court granted the motion. The parties entered into a Stipulation for Judgment that "no triable issues remain in this matter," the district court entered judgment, and Arby's appealed the court's grant of the motion. The court of appeals affirmed. Arby's petitioned for a writ of certiorari, which we granted.

¶ 5 In *Ivers I*, we addressed two questions: (1) "whether a landowner has a protectable property interest in the visibility of his land" and (2) whether severance damages are awardable for the loss of view where "land was condemned as part of a single project to build a structure that would impair the view from the remaining property, but in which that structure was not built on the severed land." *Id.* ¶¶ 11, 17. We answered the first

question in the negative and affirmed the court of appeals on that point. *Id.* ¶ 15. On the second issue, however, we reversed, finding that a right of view is a protectable property interest and adopting the rule that "if the use of the condemned property is essential to the completion of the project as a whole, the property owner is entitled to severance damages." *Id.* ¶¶ 16, 21. Because of the remaining factual question of whether "Arby's land was, or was not, essential to the project," we remanded to the district court for that factual determination and instructed the district court that if Arby's condemned land was essential to the project, the court should award Arby's appropriate damages. *Id.* ¶¶ 23–24.

¶ 6 On remand, UDOT admitted that Arby's condemned land was essential to the project. Nonetheless, the district court failed to determine the amount of appropriate damages and award such damages to Arby's pursuant to our remand order. Instead, before any hearing on the amount of damages, UDOT filed a Motion in Limine to Preclude Testimony that Defendant Owns a Right of View, arguing, for the first time, that Arby's had no right of view entitling it to recover severance damages because Arby's predecessors in interest executed deeds in 1961 and 1992 that relinquished any and all appurtenant rights, including the right of view, to UDOT. The district court denied the motion in limine as an untimely motion to amend the complaint.

¶ 7 Undaunted, UDOT filed a Request to Alter or Amend Order pursuant to Utah Code section 78B–6–512(2).[1] UDOT argued, for the first time, that the statute granted it the right to amend its taking at any time during the course of the proceedings. The district court agreed and concluded that it no longer had jurisdiction because UDOT no longer claimed to take Arby's right of view. Thus the district court never awarded Arby's the appropriate damages. Arby's appealed. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

1. Utah Code section 78B–6–512 (2008), formerly section 78–34–11 (2002), was renumbered in 2008. Because there have been only stylistic

## STANDARD OF REVIEW

¶ 8 The mandate of an appellate court binds the district court and the parties and affords the district court no discretion whether to comply with that mandate. *IHC Health Servs., Inc. v. D & K Mgmt., Inc.,* 2008 UT 73, ¶ 28, 196 P.3d 588. Consequently, because the mandate is a legal determination, reviewing whether a district court complied with the mandate presents a question of law, which we review for correctness. *See Amax Magnesium Corp. v. Utah State Tax Comm'n,* 874 P.2d 840, 842 (Utah 1994); *Slattery v. Covey & Co.,* 909 P.2d 925, 927 (Utah Ct.App.1995).

¶ 9 The interpretation of a statute also presents a question of law, which we review for correctness. *Ivers v. Utah Dep't of Transp.,* 2007 UT 19, ¶ 7, 154 P.3d 802. In reviewing for correctness, we afford no deference to the legal conclusions of the district court. *Id.*

## ANALYSIS

¶ 10 This appeal presents three issues for our consideration: (1) whether the district court violated our mandate in *Ivers I* to determine whether Arby's condemned land was essential to the project and if so, award appropriate damages; (2) whether the district court misinterpreted Utah Code section 78B–6–512(2) to allow UDOT to amend its complaint at any time in order to exclude a property right from the original scope of its taking; and (3) whether UDOT's strategy of shifting theories warrants a change in the date of valuation. We hold that the district court violated the mandate in *Ivers I* by exceeding the scope of remand and that it misinterpreted the statute to allow for amendment following entry of the Final Order of Condemnation and remand. We do not reach the merits of the valuation question because Arby's failed to preserve the issue, and no exception applies. We address each issue in turn.

changes, we cite to the current version of the statute throughout this opinion.

## I. THE DISTRICT COURT EXCEEDED THE SCOPE OF REMAND

¶ 11 Arby's argues that the district court violated our mandate in *Ivers I* when it failed to award appropriate severance damages for the taking of Arby's property, which UDOT admitted was essential to its project, and instead granted UDOT's so-called motion in limine to amend its complaint pursuant to Utah Code section 78B–6–512(2). We agree.

¶ 12 This court has long recognized that branch of the law of the case doctrine known as the mandate rule. *See Street v. Fourth Jud. Dist. Court,* 113 Utah 60, 191 P.2d 153, 158 (1948). The mandate rule "dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case." *Thurston v. Box Elder County,* 892 P.2d 1034, 1037–38 (Utah 1995). "The mandate rule ... binds both the district court and the parties to honor the mandate of the appellate court." *IHC Health Servs., Inc. v. D & K Mgmt., Inc.,* 2008 UT 73, ¶ 28, 196 P.3d 588. "[T]he lower court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Thurston,* 892 P.2d at 1038. Consequently, "where a judgment or decree is affirmed or reversed and remanded with directions to enter a particular judgment, the trial court may not permit amended or supplemental pleadings to be framed to try rights already settled." *Street,* 191 P.2d at 158. However, "where certain issues are left open by [the appellate court's] judgment or decree, the trial court ordinarily has discretion to permit amended or supplemental pleadings as to those matters." *Id.*

¶ 13 The mandate rule is justified. Without it, "considerable inefficiencies would result if parties were free to relitigate after remand issues decided in an earlier ruling of this court." *Gildea v. Guardian Title Co.,* 2001 UT 75, ¶ 9, 31 P.3d 543. The rule is also "not only reasonable, but necessary, if litigation is ever to come to an end." *Street,* 191 P.2d at 158.

¶ 14 Turning to the scope of remand in *Ivers I,* we conclude that the district court violated our mandate. In *Ivers I,* we adopted the rule that severance damages are awardable for the loss of view—even if the view–impairing structure is not built on the condemned land—if the "condemned property is essential to the completion of the project as a whole." 2007 UT 19, ¶ 21, 154 P.3d 802. Because we could not determine from the record whether Arby's condemned land was essential to the project, we "remand[ed] to the [district] court for that [necessary] factual determination." *Id.* ¶ 23. If Arby's condemned land was "essential" to the project, we directed the district court to award appropriate damages. *Id.* ¶¶ 24, 26. This was the scope of remand.

¶ 15 Following remand and pursuant to a request for admission by Arby's, UDOT admitted "that the partial taking of the Arby's property ... was essential to the completion of [the] ... construction project." Hence, all that remained was for the district court to award Arby's the appropriate severance damages. Instead, the district court was drawn in by UDOT's attempt to reframe the foreclosed issue of Arby's right of view. UDOT did so through its motion in limine, which sought to exclude evidence of the right of view because Arby's did not possess the right where its predecessors in interest deeded that right to UDOT in 1961 and 1992. Initially, the district court recognized UDOT's motion in limine for what it was, an untimely motion to amend the complaint. Yet, persuaded by UDOT's subsequent argument regarding Utah Code section 78B–6–512(2), the district court granted the motion and concluded that no claim for a taking existed.

¶ 16 UDOT argues that despite this court's remand, it could amend the pleadings because the question of whether Arby's possessed a right of view was an issue not foreclosed by *Ivers I,* pointing out that the parties did not raise the issue, this court did not grant certiorari to consider it, and the district court's determination of appropriate damages necessarily includes whether Arby's owns a right of view. For its argument, UDOT relies on *Madsen v. Washington Mutual Bank FSB,* 2008 UT 69, 199 P.3d 898. We are not convinced.

¶ 17 In *Madsen*, we concluded that despite this court's ruling on a first appeal, which held that a cause of action existed under Utah law, federal regulations preempted the cause of action. *Id.* ¶¶ 6–7, 21–23. The appellant argued that the decision in the first appeal was binding on the court below and that the issue of federal preemption was foreclosed. *Id.* ¶ 26. We distinguished that situation from the mandate rule. Prior to the first appeal, the appellee argued in its motion to dismiss or for summary judgment that the appellant had no claim under the contract or, alternatively, that federal law preempted the claim. *Id.* ¶ 5. The district court granted the motion on the grounds that no contract claim existed. Although no party appealed on the basis of preemption, we could have, in our discretion, affirmed the judgment on the alternative ground of preemption since it was "apparent in the record." *Id.* ¶ 26. But our declining to do so was not a ruling on the merits. *Id.* Therefore, because the appellee had made the issue apparent in the record before the first appeal and we had not ruled on the merits, the issue was not foreclosed. *Id.*

¶ 18 This has not occurred here. Unlike the appellee in *Madsen*, UDOT never contended before remand that Arby's had no right of view. Rather, after filing the complaint and obtaining a condemnation resolution for all rights appurtenant to Arby's remaining property, UDOT limited its argument to whether Arby's could recover severance damages for loss of visibility and view where damages "are caused by construction beyond the boundaries of the landowner's property." *Ivers I*, 2007 UT 19, ¶ 1, 154 P.3d 802. The district court agreed that Arby's could not. The parties then stipulated that "no triable issues remain in this matter," the district court entered final judgment,[2] and Arby's appealed. In accordance with the stipulation and final

judgment, UDOT never argued on appeal that Arby's had no right of view.

¶ 19 Moreover, in our determination of whether compensation for severance damages is due for construction beyond the condemned property, the existence of Arby's right of view was conceded in the argument and made implicit in our decision. Had UDOT contested this right or had Arby's possessed no right, we would have refused to review such an unripe or moot issue because our decision would have amounted to nothing more than an advisory opinion. *See State v. Ortiz*, 1999 UT 84, ¶ 3, 987 P.2d 39 ("This court will not issue advisory opinions or examine a controversy that has not yet 'sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto.'" (quoting *State v. Herrera*, 895 P.2d 359, 371 (Utah 1995))); *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) ("An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants. When an issue is moot, judicial policy dictates against our rendering an advisory opinion." (citations and internal quotation marks omitted))).

¶ 20 UDOT's failure to make apparent in the record before *Ivers I* the theory that Arby's had no right of view, its stipulation prior to final judgment that no triable issues remained, and the necessary implication of Arby's right of view in our ruling in *Ivers I* prohibit UDOT from reframing the issue to its advantage after remand. Indeed, if UDOT had already owned the right of view, it should have raised this at the outset of the case rather than the conclusion. By not doing so, it forfeited the argument and led us to foreclose the issue in *Ivers I*. Accordingly, because the trial court violated our mandate by exceeding the scope of remand, we reverse and vacate its order granting UDOT's motion in limine and direct the trial court on

---

2. The district court's entry of final judgment triggered the branch of the law of the case doctrine that precludes the district court's discretion to reconsider a prior final decision absent the three exceptional circumstances of intervening change of controlling authority, new evidence, or manifest injustice, for which relief may be sought under rule 60(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 60(b); *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶¶ 27, 34, 196 P.3d 588. UDOT, however, does not argue and we do not address this more flexible branch because the appeal activated the mandate rule. *Thurston v. Box Elder County*, 892 P.2d 1034, 1038 (Utah 1995).

remand to award appropriate severance damages to Arby's.[3]

## II. THE DISTRICT COURT MISINTERPRETED SECTION 78B–6–512(2) TO ALLOW UDOT TO AMEND ITS COMPLAINT AT ANY TIME

¶ 21 In addition to exceeding the scope of remand, the district court misinterpreted Utah Code section 78B–6–512(2). The district court criticized UDOT for shifting theories, wasting judicial resources, and raising section 78B–6–512(2) in an untimely fashion. Nonetheless, UDOT persuaded the district court that despite remand and the passage of roughly two years from the entry of the Final Order of Condemnation, section 78B–6–512(2) allowed UDOT to amend its complaint to reduce the property actually taken by no longer taking Arby's right of view. We disagree.

¶ 22 "[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795. "We need look beyond the plain language only if we find some ambiguity." *Id.* Also, we seek to avoid an interpretation that would "render some part of a provision nonsensical or absurd." *Robinson v. Mount Logan Clinic, LLC*, 2008 UT 21, ¶ 9, 182 P.3d 333.

¶ 23 Section 78B–6–512 sets the date of the service of summons as the date from which the right to compensation and damages accrues for property "actually taken" and for property "not actually taken, but injuriously affected." Utah Code Ann. § 78B–6–512(1) (2008). Section 78B–6–512 further provides that a condemner may mitigate damages or reduce the property actually taken. It states,

> The court or the jury shall consider mitigation or reduction of damages in its assessment of compensation and damages if,

after the date of the service of summons, the plaintiff:

> (a) mitigates the damages to the property; or
>
> (b) reduces the amount of property actually taken.

*Id.* § 78B–6–512(2).

¶ 24 The plain language of the statute does not support UDOT's interpretation of a broad grant to amend its pleadings at any time. Rather, the statute permits the reduction of damages if the condemner reduces the amount of property that it actually takes. While such a reduction could require an amendment of the takings complaint, the language of the statute limits the time for amendment before the "property [is] actually taken" because once property has been taken there can be no reduction. This taking occurs in the initial proceedings and is finalized by entry of the order of condemnation.

¶ 25 Here, the district court entered the Final Order of Condemnation in 2005. Pursuant to this order UDOT actually took the condemned property sought for in its complaint, including Arby's right of view. Before entry of the order, UDOT could have reduced the amount of property actually taken by not taking that right. UDOT, however, did not do this. Rather, having already taken the property, it waited for roughly two years and then, under the guise of its motion in limine, attempted to reduce the property already taken by amending the complaint pursuant to the statute. The statute does not support such amendment at any time.

¶ 26 Nor would amendment at any time comport with the purpose of the statute. The statute, in allowing the condemner to mitigate or reduce its damages, aids in the determination of the constitutional right to just compensation. *See* Utah Const. art. I, § 22. Allowing amendment subsequent to the entry of an order of condemnation creates a fiction that private property that has actually been taken, has not been taken. We do not read the statute to permit this absurd result.

---

3. In calculating the appropriate damages, the district court should not take into consideration whether Arby's has a right of view or any other purported motions in limine which attempt to exclude that right. That issue was foreclosed in Arby's favor by *Ivers I,* and we emphasize that foreclosure here.

¶ 27 Finally, because we held above that the district court exceeded the scope of remand, UDOT could not rely on the statute for the first time following remand. Its attempt to amend the complaint to exclude Arby's right of view pursuant to the statute would violate the mandate rule because that right was foreclosed by our ruling in *Ivers I.* Accordingly, we hold that the district court misinterpreted Utah Code section 78B–6–512(2) to allow UDOT to amend its complaint after the entry of the Final Order of Condemnation and our remand of *Ivers I.*

### III.  ARBY'S FAILED TO RAISE THE ADJUSTMENT IN VALUATION

¶ 28 The final issue is whether because of UDOT's strategy of shifting theories the value used for calculating Arby's damages should be adjusted to a current date. Arby's argues that because the district court recognized the delay caused by UDOT's inappropriate strategy of raising new arguments only when previous arguments had failed, the timing for valuation should be adjusted from the date set by the service of summons in 2002 to a current date. Whatever merit there may be to Arby's argument, UDOT correctly points out that Arby's failed to raise the issue before the district court, and no exception to the preservation rule applies.

¶ 29 Rule 24(a) of the Utah Rules of Appellate Procedure requires an appellant to provide "citation to the record showing that the issue was preserved in the trial court; or ... a statement of grounds for seeking review of an issue not preserved in the trial court." If an issue is not preserved, this court will not address its merits "absent plain error or exceptional circumstances." *State v. Rhinehart,* 2007 UT 61, ¶ 21, 167 P.3d 1046. "Exceptional circumstances ... is used infrequently and usually requires 'rare procedural anomalies.'" *Hill v. Estate of Allred,* 2009 UT 28, ¶ 25, 216 P.3d 929 (quoting *State v. Dunn,* 850 P.2d 1201, 1209 n. 3 (Utah 1993)).

¶ 30 Arby's concedes that it failed to preserve the issue. It argues, however, that exceptional circumstances warrant review. Specifically, Arby's emphasizes that the district court recognized UDOT's strategy of shifting theories, that this is a second appeal, and that upon remand this issue may arise and thus lead to a third appeal. A party's inappropriate strategy, for which the opportunity exists to object, and previous or potential appeals do not rise to the level of the rare procedural anomalies that constitute exceptional circumstances. We therefore do not reach the issue.

### CONCLUSION

¶ 31 We hold that the district court violated the mandate rule by exceeding the scope of our remand in *Ivers I.* We also hold that the district court misinterpreted Utah Code section 78B–6–512(2) to allow UDOT to amend its complaint following the entry of the Final Order of Condemnation and the remand of *Ivers I.* Accordingly, we reverse the district court's order, and we again remand the case. Because UDOT has admitted that Arby's condemned property was essential to the construction project, we direct the district court to award appropriate damages for Arby's loss of view.

¶ 32 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.