**2016 UT App 93**

# THE UTAH COURT OF APPEALS

UTAH DEPARTMENT OF TRANSPORTATION,
Appellee,
*v.*
BOGGESS-DRAPER COMPANY LLC,
Appellant.

Opinion
No. 20140650-CA
Filed May 5, 2016

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 090921179

Robert E. Mansfield and Steven J. Joffee, Attorneys
for Appellant

Sean D. Reyes, Brent A. Burnett, and Charles A.
Stormont, Attorneys for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUSTICE JOHN A. PEARCE concurred.[1] JUDGE MICHELE M.
CHRISTIANSEN concurred in the result, with opinion.

BENCH, Senior Judge:

¶1 Boggess-Draper Company LLC appeals the district court's
grant of the Utah Department of Transportation's (UDOT)

---

1. Senior Judge Russell W. Bench sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).
Justice John A. Pearce began his work on this case as a member
of the Utah Court of Appeals. He became a member of the Utah
Supreme Court thereafter and completed his work on the case
sitting by special assignment as authorized by law. *See generally
id.* R. 3-108(3).

motion in limine to exclude Boggess-Draper's evidence regarding severance damages in a condemnation proceeding. We reverse the district court's ruling and remand for further proceedings.

## BACKGROUND

¶2    Boggess-Draper owns several parcels of real property in South Jordan, Utah. In 2001, UDOT sought to condemn a portion of Boggess-Draper's property to expand the intersection of Lone Peak Parkway (which runs north to south) and 11400 South Street (which runs east to west). In 2005, as part of that condemnation proceeding, the district court entered a final judgment (the 2005 Final Judgment) pursuant to an agreement between Boggess-Draper and UDOT. The 2005 Final Judgment states, in relevant part,

> To enable [UDOT] to construct and maintain a public highway as a freeway, as contemplated by Title 72, Chapter 6, Section 117, Utah Code Annotated, 1998, as amended, the Owners of said entire tract of property hereby release and relinquish to said [UDOT] any and all rights appurtenant to the remaining property of said Owners by reason of the location thereof with reference to said highway, including, without limiting the foregoing, all rights of ingress to or egress from said Owner's remaining property contiguous to the lands hereby conveyed to or from said highway between said designated Point "A" and Point "B."[2]

---

2. The property between "Point 'A' and Point 'B'" is a narrow strip of land on the east side of Lone Peak Parkway, which the parties refer to as the "sliver parcel."

¶3 Subsequently, in 2010, UDOT filed a condemnation action against another portion of Boggess-Draper's property. In its amended complaint, UDOT stated that it intended to condemn certain portions of Boggess-Draper's South Jordan property adjacent to 11400 South Street on the west side of Lone Peak Parkway (the Subject Property) for the widening and reconstruction of 11400 South Street. UDOT further stated that it "is not condemning or acquiring in this action the right of reasonable access to said larger tract of property, nor any right of reasonable ingress and egress to said larger tract of property."

¶4 In 2012, Boggess-Draper designated an expert witness to offer opinions on the value of UDOT's taking, including severance damages. The expert concluded that UDOT's taking caused a loss of access, view, and exposure to the remainder of the Subject Property and that it resulted in severance damages.

¶5 Thereafter, in 2013, UDOT changed tack and filed a motion in limine to exclude all of Boggess-Draper's evidence relating to severance damages at trial because "UDOT [had] previously acquired all rights appurtenant to [the Subject Property] from Defendant Boggess-Draper." It argued that "[h]aving previously acquired those rights, and having already paid for them, UDOT should not now face severance damage claims relating to rights that Boggess-Draper does not own." In making this argument, UDOT relied on language from the 2005 Final Judgment awarding UDOT "all rights appurtenant to the remaining property of said Owners by reason of the location thereof with reference to said highway." According to UDOT, Boggess-Draper could not show that it owned a "protectable property interest that is related in any way to the types of severance damages being asserted by its expert appraiser" because Boggess-Draper had already conveyed to UDOT all rights appurtenant to the Subject Property in the 2005 Final Judgment.

¶6 Boggess-Draper opposed UDOT's motion, arguing that in the 2005 Final Judgment, "Boggess-Draper did not convey to

UDOT all rights appurtenant to the [Subject] Property." Boggess-Draper also asserted that UDOT had "forfeited its argument that Boggess-Draper previously conveyed all rights appurtenant to the [Subject Property] by failing to raise the issue at the outset of this litigation."

¶7    On December 23, 2013, the district court held a hearing on UDOT's motion and heard arguments regarding the meaning of the 2005 Final Judgment and the proper interpretation of the parties' agreement. During the hearing, Boggess-Draper argued that there was an ambiguity "as to what the parties intended with [the] language" "all rights appurtenant to the remaining property of said Owners by reason of the location thereof with reference to said highway" because at the time of the 2005 Final Judgment, 11400 South Street "was not a state highway west of Lone Peak Parkway. [It] was a city-owned road." In support of its argument, Boggess-Draper directed the district court's attention to several pieces of extrinsic evidence, including (1) a declaration from the attorney who negotiated the 2005 Final Judgment on Boggess-Draper's behalf regarding the parties' intent in stipulating to the 2005 Final Judgment, (2) a schematic drawing and the complaint from the 2001 condemnation action, and (3) a summary of the approved appraisal amount for the property taken in the 2001 condemnation action. Boggess-Draper also argued that it should be allowed to conduct additional discovery regarding the parties' intent and that the district court was "required to look at the parol evidence" "to determine whether there is or isn't an ambiguity."

¶8    UDOT, on the other hand, argued that when read as a whole, there was no ambiguity in the 2005 Final Judgment, that the district court was required to accept additional evidence only "if the Court finds an ambiguity that requires the intent of the parties to be explored," and that "there's not an ambiguity that would require that type of discovery." The district court concluded, "I think I have to look at [parol evidence] after I determine if there's an ambiguity. I don't think I look before I

determine that. . . . If I look at this and determine by viewing it that it's not ambiguous, then I don't have to go there."

¶9    On May 15, 2014, the district court entered its order granting UDOT's motion in limine. The court found that "Boggess-Draper's claims for severance damages [were] all based on claimed losses of rights appurtenant that were previously acquired by UDOT through the 2005 Final Judgment." The court further found that the 2005 Final Judgment was unambiguous because it "clearly provides that 'any and all rights appurtenant' of Boggess-Draper's property along 11400 South Street were transferred to UDOT." Because the court determined that "there is no ambiguity in the 2005 Final Judgment," it concluded that "it would be improper for the Court to consider any extrinsic evidence as to its meaning."

¶10    As to Boggess-Draper's forfeiture argument, the district court concluded "that an evidentiary motion filed more than two months before trial is timely" and that UDOT's motion in limine "was filed in accordance with the Court's Order during the October 11, 2013 Scheduling Conference, and is consistent with the purposes of the Utah Rules of Civil Procedure and Utah Rules of Evidence." Consequently, the district court overruled Boggess-Draper's objection to the timeliness of UDOT's motion in limine and granted UDOT's motion, ordering that Boggess-Draper, its witnesses, and its counsel refrain from presenting any evidence relating to severance damages at trial.

¶11    In lieu of a trial, the parties filed a stipulation resolving all remaining issues on June 17, 2014, and on June 24, the district court entered its final judgment of condemnation and satisfaction of judgment. Boggess-Draper timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶12    Boggess-Draper first argues that the district court erred in rejecting its argument that *Utah Department of Transportation v.*

*Ivers* (*Ivers II*), 2009 UT 56, 218 P.3d 583, required UDOT to raise its argument that Boggess-Draper had already conveyed the rights appurtenant to the Subject Property "at the outset of the condemnation action." "A district court's interpretation of case law . . . presents an issue of law, which we review for correctness." *Torres v. Madsen*, 2015 UT App 34, ¶ 8, 344 P.3d 652.

¶13    Boggess-Draper next argues that the district court erred in granting UDOT's motion in limine. When a district court's rationale for granting or denying a motion in limine to exclude evidence is based wholly on a legal conclusion, we will review the district court's decision for correctness. *Ford v. American Express Fin. Advisors, Inc.*, 2004 UT 70, ¶ 33, 98 P.3d 15. Here, the district court's decision to grant the motion in limine was based on its determination that the 2005 Final Judgment was not ambiguous. "Whether the terms of a contract are ambiguous is a question of law . . . ." *Oliphant v. Estate of Brunetti*, 2002 UT App 375, ¶ 14, 64 P.3d 587 (citation and internal quotation marks omitted). Thus, we review the district court's ruling on UDOT's motion in limine for correctness. *Ford*, 2004 UT 70, ¶ 33.

ANALYSIS

I. UDOT Did Not Forfeit Its Argument That It Already Owned the Rights Appurtenant to the Subject Property.

¶14    Boggess-Draper first contends that "the district court erred by failing to recognize that UDOT forfeited its argument that Boggess-Draper had previously conveyed to UDOT all rights appurtenant to the Subject Property through the 2005 Final Judgment." Although UDOT filed the motion within the time allowed under the district court's scheduling order, Boggess-Draper asserts that it was untimely because UDOT did not raise the argument "at the outset of this litigation" and "changed its position only a few months before the trial in this matter was scheduled to begin." In support of its forfeiture argument, Boggess-Draper relies on our supreme court's

decision in *Ivers II*. However, Boggess-Draper's reliance on *Ivers II* is misplaced.

¶15    *Ivers II* was an appeal following remand from an earlier appeal. *Ivers II*, 2009 UT 56, ¶ 1. *See generally Ivers v. Utah Dep't of Transp. (Ivers I)*, 2007 UT 19, 154 P.3d 802, *overruled by Utah Dep't of Transp. v. Admiral Beverage Corp.*, 2011 UT 62, 275 P.3d 208. In the initial appeal, *Ivers I*, the supreme court had been asked to consider whether an owner of condemned property could recover severance damages for "loss of view where the view-impairing structure was not built on the condemned property but was part of the project for which the property was condemned." *Ivers II*, 2009 UT 56, ¶ 1. The supreme court determined that it could and remanded the case for the district court to determine whether the "condemned property was essential to the project and, if so, . . . to award [the property owner] appropriate damages." *Id.* However, on remand, UDOT filed a motion in limine to preclude testimony indicating that the owner of the condemned property owned a right of view, on the ground that the property owner's predecessors in interest had previously "relinquished any and all appurtenant rights, including the right of view, to UDOT." *Id.* ¶ 6. The district court initially denied the motion as an untimely motion to amend the complaint but later accepted UDOT's argument that it had "the right to amend its taking at any time during the course of the proceedings" and declined to award the property owner severance damages. *Id.* ¶¶ 6–7.

¶16    The property owner appealed, and the supreme court held "that the district court violated the mandate rule by exceeding the scope of [its] remand in *Ivers I*." *Id.* ¶ 31. The supreme court explained,

> UDOT's failure to make apparent in the record before *Ivers I* the theory that [the property owner] had no right of view, its stipulation prior to final judgment that no triable issues remained, and the necessary implication of [the property owner's]

right of view in our ruling in *Ivers I* prohibit UDOT from reframing the issue to its advantage after remand. Indeed, if UDOT had already owned the right of view, it should have raised this at the outset of the case rather than the conclusion. By not doing so, it forfeited the argument and led us to foreclose the issue in *Ivers I*.

*Id.* ¶ 20; *see also id.* ¶¶ 16–17 (distinguishing *Ivers II* from *Madsen v. Washington Mutual Bank FSB*, 2008 UT 69, 199 P.3d 898, and explaining that "because the appellee [in *Madsen*] had made the issue apparent in the record before the first appeal and [the court] had not ruled on the merits, the issue was not foreclosed"); *cf. Peak Alarm Co. v. Salt Lake City Corp.*, 2013 UT 8, ¶ 13, 297 P.3d 592 (noting that in *Ivers II*, "the district court erroneously exceeded the scope of [the court's] remand," whereas in *Peak Alarm*, "the district court merely entertained—and rejected—a successive affirmative defense, treating an issue on which [the court] had not ruled in [a previous appeal]," which was not outside the scope of remand).

¶17    In contrast, when UDOT filed its motion in limine in this case, the case had not been appealed, nor had the district court issued a final judgment, and therefore there was no mandate from an appellate court limiting the scope of the issues that the district court could consider. Consequently, *Ivers II* has no applicability in the context of this case, and we conclude that the district court did not err in overruling Boggess-Draper's objection to the timeliness of UDOT's motion.[3]

---

3. We are not unsympathetic to Boggess-Draper's frustration that UDOT changed its position regarding its ownership of rights appurtenant at the eleventh hour. However, UDOT's motion in limine, despite clearly being an afterthought, was timely.

## II. The District Court Erred in Declining to Consider Boggess-Draper's Extrinsic Evidence.

¶18    Boggess-Draper next contends that "the district court erred in holding that it would be improper to consider relevant extrinsic evidence in determining whether the 2005 Final Judgment is ambiguous." We conclude that Boggess-Draper's extrinsic evidence indicated the existence of a latent ambiguity in the 2005 Final Judgment and therefore hold that the district court committed reversible error by declining to consider the extrinsic evidence.

¶19    The following rules outline Utah's standards "for the use of extrinsic evidence in reviewing contractual ambiguities." *Brodkin v. Tuhaye Golf, LLC*, 2015 UT App 165, ¶ 17, 355 P.3d 224. "First, if a contract contains no ambiguity, the court will not consider extrinsic evidence and will enforce the contract according to its terms." *Id.* ¶ 18 (footnote omitted). "Second, if the contract contains a facial ambiguity, the court will consider extrinsic evidence to resolve the ambiguity." *Id.* ¶ 19 (footnote omitted). "Third, if a party contends that an apparently unambiguous contract contains a latent ambiguity, the court will consider extrinsic evidence to determine whether the contract contains a latent ambiguity," and "if the court concludes that the contract contains a latent ambiguity, the court will consider extrinsic evidence to resolve the ambiguity." *Id.* ¶¶ 20, 22 (footnote omitted).

¶20    In determining whether it was appropriate to consider extrinsic evidence in analyzing the 2005 Final Judgment, the district court stated, "I think I have to look at [parol evidence] after I determine if there's an ambiguity. I don't think I look before I determine that. . . . If I look at this and determine by viewing it that it's not ambiguous, then I don't have to go there." While this may be a correct statement of law to the extent that a facial ambiguity is alleged, if a latent ambiguity is alleged, the district court should look to extrinsic evidence in determining whether the contract is ambiguous. *See id.* ¶¶ 19–20.

¶21 Boggess-Draper asserts that at the time of the 2001 condemnation action, the portion of 11400 South Street on the west side of Lone Peak Parkway was a city-owned road rather than a state highway. Accordingly, Boggess-Draper asserts that the language in the 2005 Final Judgment giving UDOT "rights appurtenant to the remaining property" of Boggess-Draper "by reason of the location thereof with reference to said highway"[4] is ambiguous. This argument fails to establish a facial ambiguity because a public road constitutes a "highway" regardless of whether it is classified as a "state" highway. *See* Utah Code Ann. § 72-1-102(7) (LexisNexis 2009) (defining "highway" for purposes of Utah's Transportation Code as "any public road, street, alley, lane, court, place, viaduct, tunnel, culvert, bridge, or structure laid out or erected for public use, or dedicated or abandoned to the public, or made public in an action for the partition of real property, including the entire area within the right-of-way"). However, the fact that 11400 South Street was not a state highway does threaten to expose a *latent* ambiguity in the 2005 Final Judgment because it indicates that the street was not owned by UDOT at the time of the 2005 Final Judgment.[5]

---

4. The parties do not dispute that the term "highway" refers to 11400 South Street; rather, they disagree only as to whether the term "highway" refers *to the entirety* of 11400 South Street.

5. As the concurrence points out, nothing in the 2005 Final Judgment references a state highway. But our decision does not rest on the assumption that only land bordering a state highway could fall under the 2005 Final Judgment. Rather, the fact that the western portion of 11400 South Street was not a state highway at the time of the 2005 Final Judgment is relevant only because it indicates that UDOT did not own that portion of the highway. The rights appurtenant were conveyed "[t]o enable [UDOT] to construct and maintain a public highway as a freeway." But UDOT could not make a freeway out of a highway it did not own. Thus, if Boggess-Draper can establish that UDOT

(continued…)

¶22 "A latent ambiguity 'arises from a collateral matter when the document's terms are applied or executed.'" *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 28, 304 P.3d 841 (quoting *Black's Law Dictionary* 93 (9th ed. 2009)); *accord Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 39, 367 P.3d 994. The fact that UDOT did not acquire the western portion of 11400 South Street until after the 2005 Final Judgment is an "objectively verifiable" collateral matter that may give rise to a latent ambiguity. *See Mind & Motion*, 2016 UT 6, ¶¶ 40–42 (emphasis omitted) (discussing how a latent ambiguity may be established). If UDOT did not own the western portion of 11400 South Street at the time of the 2005 Final Judgment, then the parties' intent to grant rights appurtenant with respect to that portion of the highway is called into question.[6] Because "Utah's rules of contract interpretation allow courts to consider *any* relevant evidence to determine whether a latent ambiguity exists in contract terms that otherwise appear to be [facially] unambiguous," *Watkins*, 2013 UT 49, ¶ 28 (alteration in original) (citation and internal quotation marks omitted), the district court should have considered Boggess-Draper's extrinsic evidence to determine whether the change in ownership of the highway

---

(…continued)
did not own the western portion of 11400 South Street at the time of the 2005 Final Judgment because it was not a state highway, then it can establish a latent ambiguity based on the parties' understanding of which property constituted the public highway in question at the time of the 2005 Final Judgment.

6. The 2005 Final Judgment itself seems to emphasize the point that the parties' focus in 2005 was on Boggess-Draper's property lying east of Lone Peak Parkway. The 2005 Final Judgment expressly references "property contiguous to the lands hereby conveyed to or from said highway between said designated Point 'A' and Point 'B.'" Both Points A and B lie to the east of Lone Peak Parkway.

created a latent ambiguity in the 2005 Final Judgment. *Cf. id.* ¶¶ 29–30 (holding that extrinsic evidence was admissible to show that although the name of the vehicle the parties had contracted to buy had changed between the time of the contract and the time the vehicle became available, the vehicle was the same one for which the parties contracted).

## CONCLUSION

¶23    We conclude that UDOT's motion in limine was timely. However, we agree with Boggess-Draper that the district court erred in declining to consider extrinsic evidence to determine whether the 2005 Final Judgment contained a latent ambiguity. Accordingly, we reverse the district court's grant of UDOT's motion in limine and remand for additional proceedings consistent with this opinion.

———————

CHRISTIANSEN, Judge (concurring):

¶24    I agree with the result reached by the majority opinion, but I write separately because I believe the parties' written settlement agreement may contain a different latent ambiguity than that identified by the majority. The 2005 Final Judgment describes the land at issue in the 2001 condemnation action as "[a] parcel of land in fee for the purpose of widening 11400 South Street as part of the construction of a freeway known as Project No. 15-7." The pertinent language is at the end of the 2005 Final Judgment, with my emphases added:

> To enable [UDOT] to construct and maintain a *public highway* as a freeway, *as contemplated by Title 72, Chapter 6, Section 117, Utah Code Annotated*, 1998, as amended, *the Owners of said entire tract of property* hereby release and relinquish to said [UDOT] *any and all rights appurtenant to the remaining property of said Owners by reason of the location thereof with*

> *reference to said highway*, including, without limiting the foregoing, all rights of ingress to or egress from said Owner's remaining property contiguous to the lands hereby conveyed to or from said highway between said designated Point "A" and Point "B."

During oral argument before this court and at the hearing on UDOT's motion in limine before the district court, Boggess-Draper argued that the language "by reason of the location thereof with reference to said highway" is ambiguous and that the district court should have considered extrinsic evidence to determine whether the parties intended their agreement to include the rights appurtenant to all of Boggess-Draper's property abutting 11400 South Street. *See supra* n.4. According to Boggess-Draper, this language only refers to 11400 South Street east of Lone Peak Parkway, because at the time of the 2001 condemnation action 11400 South Street "was not a state highway west of Lone Peak Parkway," and UDOT did not gain ownership of 11400 South Street west of Lone Peak Parkway until the present condemnation action. Boggess-Draper contends that the only section of its property that bordered on the portion of 11400 South Street that UDOT owned at the time of the 2001 condemnation action was the "sliver parcel" on the east side of Lone Peak Parkway, i.e., a narrow strip of land that was specifically called out in the 2005 Final Judgment ("between said designated Point 'A' and Point 'B'"). Thus, according to Boggess-Draper, the 2005 Final Judgment only conveyed rights appurtenant to the sliver parcel and not along the entirety of Boggess-Draper's property abutting 11400 South Street.

¶25 The majority agrees with Boggess-Draper that if UDOT did not own the western portion of 11400 South Street at the time of the 2005 Final Judgment, then the parties' intent to grant rights appurtenant with respect to that portion can be called into question. While I agree with the majority that the settlement agreement does not contain a facial ambiguity, I disagree that ownership of 11400 South Street is determinative of whether

there exists a latent ambiguity here. Notably, nothing in the 2005 Final Judgment references a "state highway" as argued by Boggess-Draper. Rather, the 2005 Final Judgment only references a "public highway . . . as contemplated by Title 72, Chapter 6, Section 117, Utah Code Annotated." That statutory section permits UDOT (and other governing bodies) to establish "a limited-access facility" and to acquire by condemnation the property rights for a limited-access facility. *See* Utah Code Ann. § 72-6-117(1), (5) (LexisNexis 2009). Section 72-1-102 defines a "[l]imited-access facility" as "a highway especially designated for through traffic, and over, from, or to which neither owners nor occupants of abutting lands nor other persons have any right or easement, or have only a limited right or easement of access, light, air, or view." *Id.* § 72-1-102(11). "Highway" is defined by the same statute as "*any public road, street*, alley, lane, court, place, viaduct, tunnel, culvert, bridge, or structure laid out or erected for public use, or dedicated or abandoned to the public, or made public in an action for the partition of real property, including the entire area within the right-of-way." *Id.* § 72-1-102(7) (emphasis added).

¶26    Based on the foregoing, it seems unimportant that 11400 South Street west of Lone Peak Parkway was not a "state highway" at the time of the 2001 condemnation action for purposes of analyzing the text of the 2005 Final Judgment to identify any ambiguity. At the time of the 2001 condemnation action, the western portion of 11400 South Street was a public road and therefore constituted a "highway" as defined by section 72-1-102.[7] *See id.* The 2005 Final Judgment referred to a "public highway," and therefore, the language of the 2005 Final Judgment apparently applied to the entirety of 11400 South

---

7. Boggess-Draper acknowledged to the district court that 11400 South Street west of Lone Peak Parkway was a "city-owned road" in 2001 and that the "[s]outh half was owned by Draper City [and] the northern half was owned by South Jordan City."

Street regardless of whether UDOT owned the western portion so as to make it a "state highway." It follows that the 2005 Final Judgment's terms appear to apply to *all* of Boggess-Draper's property abutting the highway—11400 South Street—whether or not those portions of the highway were state highways.[8]

¶27 The majority correctly points out that in determining the meaning of a written agreement, courts should consider relevant extrinsic evidence if a latent ambiguity is detected. "[A] 'latent ambiguity arises from a collateral matter when the document's terms are applied or executed,' not from any facial deficiency in the contract's terms." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 40, 367 P.3d 994 (quoting *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 28, 304 P.3d 841). When a latent ambiguity exists in a written agreement, objectively verifiable extrinsic evidence is admissible to indicate the actual intent of the parties. *Id.* In my opinion, it is the two phrases "the Owners of said entire tract of property" and "any and all rights appurtenant to the remaining property of said Owners by reason of the location thereof with reference to said highway" in the 2005 Final Judgment, rather than the language highlighted by the majority, that may give rise to a latent ambiguity in the document. Specifically, it is undisputed that Boggess-Draper owned property abutting 11400 South Street at the time of the 2001 condemnation action. It is also undisputed that in 2001, UDOT condemned a portion of Boggess-Draper's property located mostly to the east of Lone Peak Parkway and paid

---

8. The 2001 condemnation action was part of a larger project to turn 11400 South Street into a freeway. The fact that UDOT did not own the western portion of 11400 South Street at the time of the 2005 Final Judgment does not necessarily mean that UDOT could not have acquired rights appurtenant to Boggess-Draper's land adjacent to the western portion of 11400 South Street in anticipation of its larger plans to turn 11400 South Street into a freeway.

Boggess-Draper for the take. But the term "remaining property" is undefined and, accordingly, I agree with the majority that the district court should have considered extrinsic evidence to determine whether a latent ambiguity existed in the 2005 Final Judgment.

––––––––––