**2017 UT App 6**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee and Cross-appellant,

*v.*

JOAN A. STEED AND FRANK J. STEED,
Appellants and Cross-appellees.

Opinion
No. 20141044-CA
Filed January 6, 2017

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 081907873

Max D. Wheeler, Rodney R. Parker, and Richard A.
Van Wagoner, Attorneys for Appellants
and Cross-appellees

Sean D. Reyes, Bridget K. Romano, and Stanford E.
Purser, Attorneys for Appellee and Cross-appellant

Scott H. Sweat and Tyler J. Berg, Attorneys for
Amicus Curiae Wasatch County

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1     Joan A. Steed and Frank J. Steed appeal the district court's
order denying the refund of tax penalties and interest, as well as
incarceration and probation costs after their convictions for

failure to file tax returns were reversed.[1] We affirm in part and reverse in part.

BACKGROUND[2]

¶2 The Steeds were convicted of three counts of failure to file tax returns and one count of conducting a pattern of unlawful activity. Prior to sentencing, the Steeds agreed to accept the Utah State Tax Commission's determination of past-due taxes owed for purposes of calculating restitution. Mr. Steed was sentenced to zero to five years in prison on each count of the failure to file tax returns. In addition, Mr. Steed was sentenced to one to fifteen years in prison for the pattern-of-unlawful-activity conviction and fined $5,300. These prison sentences were stayed and the district court imposed a total of six years of probation[3]

---

1. After the Steeds filed their motion for a refund of tax penalties and interest and costs of incarceration and probation, Mr. Steed died. Before the district court issued its ruling on the motion, the Steeds filed a Suggestion of Death seeking the substitution of Mr. Steed's estate in his stead. The district court issued its ruling on the motion for a refund in October, 2014, and the parties appealed. This court issued a limited remand to reform the district court's ruling and order to identify the State of Utah as the obligor for the partial refund the district court had granted. The order reforming the ruling substituted the estate of Mr. Steed for Mr. Steed.

2. A more complete history of this case is given in *State v. Steed*, 2014 UT 16, 325 P.3d 87. We recount only those facts pertinent to this appeal.

3. The court imposed three years of probation for each failure-to-file count, the first two to run consecutively and the last count to run concurrently. The court also ordered three years of

(continued…)

and ordered him to serve 365 days in Salt Lake County jail as a term of the probation. Mr. Steed was ordered to pay restitution in the amount of the tax owed for the years he did not file a tax return, a ten percent failure-to-file fee, a ten percent late-payment fee, and interest.

¶3    Mrs. Steed was also sentenced to zero to five years in prison for each of the three counts of failure to file a tax return and one to fifteen years in prison for the pattern-of-unlawful-activity conviction. She was also ordered to pay a $140,298 fine pursuant to the pattern-of-unlawful-activity statute.[4] These sentences were stayed and Mrs. Steed was placed on probation for a total of six years and ordered to serve 180 days in the Salt Lake County jail after her husband was released.[5] Like Mr. Steed, Mrs. Steed was ordered to pay restitution in the amount of the taxes owed for the years she did not file a tax return, an additional twenty percent in penalties, and interest.

---

(…continued)
probation for the pattern-of-unlawful-activity conviction, with that three-year term to run concurrently with the other probationary terms.

4. The Steeds filed separate tax returns and owed different amounts. The pattern-of-unlawful-activity statute allows for the imposition of a fine "not more than twice the amount" of net proceeds derived from a defendant's prohibited conduct. *See* Utah Code Ann. § 76-10-1603.5(2) (LexisNexis Supp. 2016). The court ordered that the Steeds each pay a fine pursuant to this statute in the amount of one-half of their individual tax liabilities.

5. The court staggered the jail terms so that one of the Steeds would be "available to operate the business while the other is serving the jail commitment."

¶4    The court clarified that the amount of restitution it ordered for taxes due was based on "the figures that were developed by the State Tax Commission," which "both sides had agreed that they would accept." The court asked that the Steeds' accountant and the Commission's accountant work together to determine the penalties and interest portion of the restitution.

¶5    Because of Mr. Steed's poor health, the Steeds requested that they be able to serve their jail terms "where they live."[6] The court ordered Mr. Steed to notify the court within two weeks whether he had "made arrangements at his own expense to serve the time in the Duchesne County jail" or report to the Salt Lake County jail in thirty days.

¶6    Mr. Steed reported to the Salt Lake County Adult Detention Center but was transferred to the Wasatch County jail to "serve the remainder of his 365 day jail sentence."[7] The order approving Mr. Steed's transfer to the Wasatch County jail stated, "The defendant shall sign and be bound by any such conditions contained in a contract of confinement by and between [him] and Wasatch County, including per diem costs, work release conditions and any [and] all such costs and conditions of confinement and release imposed by Wasatch County." Mrs. Steed was also transferred to the Wasatch County jail and served her sentence under the same terms.

---

6. It appears from Mr. Steed's contract with Wasatch County jail and a probation violation report that the Steeds were living in Midway, Utah, in Wasatch County. Duchesne County was "the county of [their] business and alternate residence."

7. It is not clear from the record why Mr. Steed was transferred from the Salt Lake County Adult Detention Center to the Wasatch County jail rather than the Duchesne County jail as originally requested.

¶7     The Steeds appealed their convictions, and our supreme court concluded "there was insufficient evidence to support the verdicts" and reversed and remanded the case "with instructions to enter a judgment of acquittal." *State v. Steed*, 2014 UT 16, ¶¶ 2, 55, 325 P.3d 87. On remand, the Steeds moved for the district court to order a refund of the tax penalties and interest, fines, and costs associated with incarceration and probation as part of its judgment of acquittal.[8] The court ordered a refund of the fines for the pattern-of-unlawful-activity counts but denied a return of the tax penalties and interest and the costs of incarceration and probation. The Steeds appeal.

ISSUES AND STANDARDS OF REVIEW

¶8     The Steeds contend due process "requires restoration of all funds taken from or paid by [them] as a result of the now-reversed convictions." These funds fall into three categories: money paid to the Utah State Tax Commission for penalties and interest on back taxes, money paid to Wasatch County pursuant to a private incarceration contract, and money paid to Adult Probation and Parole for probation services. The court gave different legal reasons for denying the refund of these different costs, and "[w]e review a district court's legal conclusions for correctness." *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 117, 299 P.3d 990.

ANALYSIS

¶9     As a threshold matter, the State argues the Steeds cannot challenge the civil tax penalties and interest imposed as part of

---

8. The Steeds did not request a refund of the back taxes they had paid as part of restitution, nor do they request this on appeal. There is apparently no dispute the taxes were properly owed.

their sentences "because they did not raise the issue in their first appeal." In the current appeal, the Steeds challenge the district court's refusal to vacate the tax penalties and interest portions of their restitution orders following acquittal. The crux of the Steeds' complaint is that, after their acquittal, the district court lacks jurisdiction to uphold part of a restitution order. This is not an issue that could have been raised before the Steeds' convictions were reversed. To argue that the court cannot impose tax penalties and interest absent conviction on the first appeal would have been unripe for adjudication. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 29, 215 P.3d 933 ("An issue is not ripe for appeal if there exists no more than a difference of opinion regarding the hypothetical application of [law] to a situation in which the parties might, at some future time, find themselves." (citation and internal quotation marks omitted)); *cf. State v. Ortiz*, 1999 UT 84, ¶¶ 1–5, 987 P.2d 39 (holding that defendants' challenge to a sentencing structure before conviction was not ripe for review). We thus conclude that the Steeds may challenge the district court's refusal to vacate the tax penalties and interest imposed as part of their sentences.

¶10　The State also argues that to allow the Steeds to litigate a refund "exceeds the scope of the [Utah] Supreme Court's mandate" to enter a judgment of acquittal on remand. To support its contention, the State relies on *Utah Department of Transportation v. Ivers*, 2009 UT 56, 218 P.3d 583, and *J. Pochynok Co. v. Smedsrud*, 2007 UT App 88, 157 P.3d 822. These cases are inapposite.

¶11　In *Ivers*, a fast-food restaurant sued for loss of view due to a Utah Department of Transportation (UDOT) construction project. *Ivers*, 2009 UT 56, ¶ 1. On appeal, our supreme court "addressed whether damages were awardable for [the] loss of view where the view-impairing structure was not built on the condemned property but was part of the project for which the property was condemned." *Id.* The case was remanded to

determine whether the "condemned property was essential to the project, and if so, . . . the district court [was] to award the restaurant appropriate damages." *Id.* On remand "UDOT argued, for the first time, that the statute granted it the right to amend its taking at any time during the course of the proceedings." *Id.* ¶ 7. The district court allowed UDOT to amend its complaint to "no longer [claim the taking of] the restaurant's right of view." *Id.* ¶¶ 1, 7. On appeal the second time, the supreme court "conclude[d] that the district court violated [its] mandate" because allowing UDOT to amend its complaint was beyond the scope of the remand. *Id.* ¶¶ 14–15, 20. Thus in *Ivers*, the remand involved a change of claim. In this case, the parties are merely arguing about the consequences of an acquittal, not changing the scope of the action.

¶12    In *Pochynok*, the prevailing party, the Smedsruds, successfully garnished $37,585 from Pochynok for attorney fees and costs. *J. Pochynok Co.*, 2007 UT App 88, ¶ 4. On appeal, this court affirmed the trial court's decision on the award of attorney fees and costs. *Id.* ¶ 5. Our supreme court granted certiorari and reversed the award, "directing this court to remand [the case] to the trial court for a factual determination of awards and offsets, followed by a ruling on who [was] the successful party . . . and whether an award of attorney fees . . . [was] proper." *Id.* (citation and internal quotation marks omitted). Back in the trial court, Pochynok filed a motion to set aside the garnishment and to reinstate a mechanics' lien. *Id.* ¶ 6. The trial court subsequently denied the motion and determined that the Smedsruds were the prevailing party and again awarded them attorney fees and costs. *Id.* On appeal a second time, Pochynok asserted the trial court erred in denying its motion to reinstate the lien and set aside the garnishment. *Id.* ¶ 15. But this court stated that "these issues were not before the trial court on remand" and it would not address them. *Id.* The "original challenge to the garnishment . . . was unsuccessful" on the first appeal and "not accepted for review under the Utah Supreme Court's writ of certiorari" and

thus should not have been entertained by the trial court on remand. *Id.* ¶ 16. Thus, as the Steeds correctly point out, "the question was whether the trial court was free to reconsider a garnishment order that had been specifically appealed and affirmed. Obviously, it was not." That is not the case here.

¶13    We conclude that these cases are distinguishable from the one before us and in no way preclude the relief the Steeds request.

## I. Tax Penalties and Interest

¶14    The district court denied the Steeds' request for a refund of the penalties and interest they paid on back taxes because the Steeds admitted they had not filed their tax returns for the years in question and because the Tax Commission has "statutory authority" independent of a criminal conviction "to charge penalties and interest." The court also based its decision on "the fact that [the Steeds] worked with the Utah State Tax Commission to agree upon taxes due along with penalties and interest."[9]

¶15    The Steeds contend that because their convictions were reversed, "the court's jurisdiction to impose restitution disappeared" and "[d]ue process therefore requires the return of the penalties and interest." We agree.

---

9. At the presentencing hearing, the Steeds agreed to accept the Tax Commission's figures for the taxes they owed. At sentencing, they were ordered to work with the Tax Commission to determine the amount of restitution, including penalties and interest. There is no indication in the record that the Steeds collaborated with the Tax Commission on penalties and interest before being ordered to do so by the court. Thus, these amounts were determined after sentencing and have no bearing on the scope of relief they are entitled to upon being acquitted.

¶16　Restitution orders are part of sentencing. *See State v. Cabrera*, 2007 UT App 194, ¶¶ 11–12, 163 P.3d 707; *see also State v. Laycock*, 2009 UT 53, ¶ 18, 214 P.3d 104 (stating that "restitution . . . is a part of a criminal sanction imposed by the state"). A sentence is part of a conviction and is therefore necessarily implicated in an acquittal. *See State v. Walker*, 2002 UT App 290, ¶ 11, 55 P.3d 1165 ("[I]n the technical legal sense, sentence is ordinarily synonymous with judgment, and denotes the action of a court of criminal jurisdiction formally declaring to the accused the legal consequences of the guilt which he has confessed or of which he has been convicted." Accordingly, "under Utah law a trial court must impose a sentence in order to create a final, appealable order." (citation and internal quotation marks omitted)). Thus, when the Steeds were acquitted of the charges underlying their convictions, the court no longer had jurisdiction to impose a sentence, including the restitution order that was part of the sentence. *See In re Barton*, 21 P. 998, 999 (Utah 1889) ("If it is found that no crime has been committed, the jurisdiction of the court ceases . . . .") Because the conviction has been undone, the sentence is also necessarily null.

¶17　In this case, the tax penalties and interest were ordered as part of restitution. The district court judge ordered the restitution for the failure-to-file counts to be "the tax due" and stated, "I will add to that the 10 percent failure to file fee and the 10 percent late payment fee . . . . I'll also include interest at the statutory rate . . . ." Because the restitution order was part of the sentence, it is no longer valid, and the obligation to pay penalties and interest as part of that order is now also void.

¶18　Although the Tax Commission could have assessed penalties and interest pursuant to section 59-1-401 of the Utah Code, these are civil assessments that, absent a criminal proceeding, would have been imposed through a different process. *See* Utah Code Ann. § 59-1-401(2)(c)(i)(B), (3)(b)(i)(B), (14) (LexisNexis 2016); *see also State v. Steed*, 2014 UT 16, ¶ 22, 325

P.3d 87 ("A defendant's failure to file without a corresponding intent gives rise only to civil penalties . . . ."). And even though it is possible to assess penalties and interest under the civil tax code, the Steeds would need to be afforded separate due process in a separate civil proceeding. *Cf. State v. Lindquist*, 674 P.2d 1234, 1236, 1238 (Utah 1983) (stating that a defendant who was committed to the Utah State Hospital under both criminal and civil statutes "[was] entitled to the full procedural protections inherent in both commitment statutes, including the hearing requirements of both"). We therefore conclude the Steeds are entitled to a refund of the tax penalties and interest assessed as part of the criminal restitution order.[10]

## II. Costs of Incarceration

¶19   The district court determined that the Steeds were not entitled to a refund of the money they paid Wasatch County to serve their time in the Wasatch County jail because they were ordered to "serve their time in Salt Lake County jail" and "Defendants chose to enter into a private contract with Wasatch County." The court concluded,

> While the Defendants were required to serve a period of incarceration, they voluntarily assumed the costs associated with serving that time in Wasatch County jail. . . . [T]he money paid to Wasatch County was the result of a civil contract entered into by Wasatch County and Defendants

---

10. The State also argues that this court cannot compel the Tax Commission to refund these assessments because the Commission is not a party to the case. We doubt that compulsion would be required for the Commission to discharge its court-determined responsibility. And, of course, the Commission may be brought in as a party on remand if necessary.

and was not paid as a fine or restitution in the underlying criminal action.

¶20 The Steeds argue they should be refunded the costs of incarceration because their incarceration was not voluntary, stating, "[t]his was not a voluntary stay as it would have been if they checked into the Grand America Hotel. [The Steeds'] agreement to pay the costs of incarceration was extracted pursuant to the coercive power of the convictions, just like the fines and restitution were extracted from them." But the Steeds do not address the primary basis for the court's decision: that they voluntarily chose to transfer to Wasatch County fully understanding that they would bear the cost of the change of location, and, more importantly, that this arrangement was the result of a *civil contract* between the Steeds and Wasatch County. "Because [the Steeds] fail[] to address the basis of the district court's ruling, we reject this challenge." *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375. "[W]e will not assume [a party's] burden of argument and research." *Id.* (alterations in original) (citation and internal quotation marks omitted). Accordingly, we affirm the district court's ruling on the costs of incarceration.[11]

---

11. It may be that the Steeds could have been entitled to a refund of the costs of incarceration under Utah Code section 76-3-201(6)(d), which states, "If on appeal the defendant is found not guilty of the criminal activity . . . and that finding is final . . . , the county shall reimburse the defendant for restitution the defendant paid for costs of incarceration." Utah Code Ann. § 76-3-201(6)(d) (LexisNexis Supp. 2016). But it is not clear whether this statute applies if a civil contract is in place and the Steeds do not make this argument. Indeed, they do not address this statute at all. Consequently, we do not address it further. *See O'Dea v. Olea*, 2009 UT 46, ¶ 21, 217 P.3d 704 ("Because [the party] did not

(continued…)

### III. Costs of Probation

¶21 The district court determined that the Steeds are not entitled to a refund of the fees they paid to Adult Probation and Parole. It based its decision on *State v. Parker*, 872 P.2d 1041 (Utah Ct. App. 1994). In *Parker*, the defendant "successfully appealed his burglary convictions" and "the trial court [subsequently] entered an order dismissing the criminal case . . . , thereby vacating his convictions." *Id.* at 1043. The defendant "sought reimbursement for the fees and fines he paid following his conviction," including fees he paid to a "secure residential facility run by the State Department of Corrections for parolees and probationers." *Id.* at 1042–43. This court determined that the defendant was not entitled to a return of the fees paid for probation because the "fees are part of the rehabilitative process rather than punitive, and . . . [the defendant] received a benefit for those fees."[12] *Id.* at 1049. "The purposes of probation are reform and rehabilitation rather than punishment." *Id.* (citation and internal quotation marks omitted). A subsequent case from the Idaho Court of Appeals, relying on *Parker*, concluded that "requiring the payment of fees to defray costs of supervision on probation, if possible to perform, is reasonable and has a rehabilitative effect." *State v. Walker*, 887 P.2d 53, 56–57 (Idaho Ct. App. 1994). Here, the district court

---

(…continued)
raise this argument below, [it] did not preserve it and we will not address it.").

12. *State v. Parker*, 872 P.2d 1041 (Utah Ct. App. 1994), is a fractured opinion. Judge Billings wrote the majority opinion, but neither Judge Davis nor Judge Greenwood concurred in her analysis of the return of fees. Judge Greenwood concurred with Judge Davis as to the return of fees, and thus the lead opinion is not the holding of the court on that issue. *Id.* at 1048, 1051.

determined that, "[g]iven the conclusions by both the Utah Court of Appeals and the Idaho Court of Appeals, . . . it would be inappropriate to refund the fees paid by Defendants to Adult Probation and Parole . . . because Defendants actually received the State's supervision services."

¶22 The Steeds contend that *Parker* does not preclude a refund of the costs of probation. In their view, "*Parker* supports [a] refund" because "[u]nlike the treatment the defendant in *Parker* received, the Steeds received no treatment." Instead, the Steeds assert that their probation "was clearly punitive" and the periods of incarceration "were not therapeutic."

¶23 But our supreme court has determined that the purpose of probation is reform and rehabilitation generally. *Baine v. Beckstead*, 347 P.2d 554, 557 (Utah 1959). And the court has not distinguished between probation where therapeutic treatment is prescribed and probation that does not include therapeutic treatment. *See id.* Further, other courts have also determined that because "the purpose of probation is primarily rehabilitative," where the State provided supervision services, refunds for probation supervision fees are appropriately denied. *People v. Noel*, 134 P.3d 484, 487 (Colo. App. 2005); *see also Walker*, 887 P.2d at 57.

¶24 We conclude the district court appropriately denied the Steeds' request for a refund of the costs of probation, even though we acknowledge that this result is troubling at an intuitive level.

CONCLUSION

¶25 We conclude that because the Steeds' convictions were reversed, the restitution order including tax penalties and interest is void, and they are entitled to a refund of those assessments. Because the Steeds have not addressed the basis for

the district court's ruling that they are not entitled to a refund of the costs of incarceration, we affirm that determination. We likewise affirm the court's determination that the Steeds are not entitled to a refund of the costs of probation paid to Adult Probation and Parole.

¶26 Affirmed in part and reversed in part.

———————